STATE OF NEBRASKA, APPELLEE, V. CHARLES L. DILLON,
APPELLANT.

382 N.W.2d 353

Filed February 28, 1986. No. 85-595.

Terrance A. Poppe of Hecht, Sweet, Alesio & Morrow, P.C., for appellant.

Robert M. Spire, Attorney General, and Laura L. Freppel, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

On his plea of nolo contendere, Charles L. Dillon was convicted in the district court for Nuckolls County on a charge of first degree sexual assault and was sentenced to imprisonment for a term of 16 to 49 years. Dillon appeals his sentence, claiming ineffective assistance of counsel at the sentence hearing and an excessive sentence. We affirm.

The complaint filed in the county court for Nuckolls County charged Dillon with commission of four felonies—attempted first degree murder (Neb. Rev. Stat. §§ 28-201 and 28-303 (Reissue 1979)), first degree forcible sexual assault (Neb. Rev. Stat. § 28-319(1)(a) (Reissue 1979)), arson in the first degree (Neb. Rev. Stat. § 28-502 (Reissue 1979)), and burglary (Neb. Rev. Stat. § 28-507 (Reissue 1979)). Attempted murder, first

degree forcible sexual assault, and arson are Class II felonies punishable by imprisonment for 1 to 50 years, and burglary is a Class III felony punishable by imprisonment for 1 to 20 years, a fine of $25,000, or by both such imprisonment and fine. See Neb. Rev. Stat. § 28-105(1) (Reissue 1979).

After a preliminary hearing, Dillon was bound over to district court for trial on the four felony charges. However, as the result of a plea bargain, Dillon entered his nolo contendere plea to the charge of first degree forcible sexual assault, and the State dismissed the other felony counts in the information—attempted murder, arson, and burglary. The district court accepted Dillon's plea of nolo contendere and ordered a presentence investigation and report.

As reflected in the presentence report, the victim and her friends met Dillon at the Sweetwater Lounge in Superior on the evening of October 31, 1984. The victim did not know Dillon before that evening, and participated in casual conversation with Dillon and her friends at the Sweetwater. Around 1 a.m. on November 1, the victim left the Sweetwater and drove alone to her rural home located approximately 8 miles from Superior. During her drive home, the victim noticed that a car had been following her from Superior, but that automobile drove past the victim's house when the victim turned her vehicle into the residence's driveway. The victim went to bed, fell asleep, and was awakened by a noise around 2:30 a.m. While the victim was investigating the noise, Dillon "kicked in" the kitchen door of the victim's house and entered the home, where he brutally and sexually assaulted the victim. The victim's last recollection of that event was Dillon's choking her until she lost consciousness.

A motorist en route to work at 3:30 a.m. saw flames coming from the victim's house. After knocking on a door of the victim's house without response, the passerby went to a neighboring farm, from which the fire department was called. The neighbor and the motorist returned to the victim's burning house, searched, and discovered the victim inside the smoke-filled house, still unconscious. The neighbor and the motorist removed the victim from the burning building, and the fire department arrived. The victim was transported by ambulance to a local hospital, where she regained

consciousness and was confined for 7 days.

The State Fire Marshal's office investigated the fire and concluded that the fire was not accidentally caused but was "intentionally set" and was "arson." Further investigation disclosed that telephone lines into the victim's house had been "jerked out" or cut and confirmed that the kitchen door of the victim's residence had been forcibly opened.

Dillon was arrested on November 1 and was found to be in possession of a 16-gauge shotgun belonging to the victim and in the victim's house at the time of the assault. In his conversation with the probation officer who prepared the presentence report, Dillon mentioned being at the scene of the fire and "pulling the firehose off the road so that the ambulance could get by when it left." A clinical psychologist and a psychiatrist, at the district court's request, examined Dillon and reported that he was not a mentally disordered sex offender. See Neb. Rev. Stat. §§ 29-2911 to 29-2915 (Reissue 1979).

Dillon, 36 years old and unmarried, appeared for sentence by the district court which had reviewed the presentence report. Dillon had a seventh-grade education, had worked as a laborer on oil rigs and in construction work, and had been previously convicted of the crime of burglary and sentenced to 1 year in the Nebraska Penal and Correctional Complex. At the sentence hearing Dillon's lawyer objected to part of the presentence report, namely, an affidavit from a Kansas woman who stated that, in August 1983, she was forcibly sexually assaulted by Dillon. Regarding that affidavit, Dillon's lawyer objected as follows:

> One thing I do object to, Your Honor, is the inclusion in the presentence report of an affidavit from [the Kansas woman] that's with regard to another matter about a year and a half ago, I believe. Mr. Dillon categorically denies that the facts in that affidavit are true as presented to the court.

When asked whether he had anything to say about the woman's affidavit, Dillon responded: "[T]here ain't a god damn bit of truth in that." After considering the presentence report, the court sentenced Dillon to imprisonment for 16 to 49 years in the Nebraska Penal and Correctional Complex.

As an alleged error, Dillon claims ineffective assistance of counsel in reference to inclusion of the Kansas woman's affidavit in the presentence report considered by the court in determining the sentence imposed on Dillon. See, U.S. Const. amend. VI; Neb. Const. art. I, § 11. Before disposing of Dillon's allegation of ineffective assistance of counsel at the sentence hearing, we note that the Nebraska Evidence Rules do not apply at a sentence hearing. See Neb. Evid. R. 1101(4)(b) (Neb. Rev. Stat. § 27-1101(4)(b) (Reissue 1979)).

One alleging ineffective assistance of counsel has the burden of establishing incompetency of counsel and, further, demonstrating in what manner inadequacy of counsel was prejudicial. *State v. McNitt*, 216 Neb. 837, 346 N.W.2d 259 (1984).

In *State v. Goodpasture*, 215 Neb. 341, 344-45, 338 N.W.2d 446, 449 (1983), this court observed:

"It is a long accepted practice in this state that before sentencing a defendant after conviction a trial judge has a broad discretion in the sourse [sic] and type of evidence he may use to assist him in determining the kind and extent of punishment to be imposed within the limits fixed by statute. Highly relevant, if not essential, to his determination of an appropriate sentence is the gaining of knowledge concerning defendant's life, character, and previous conduct. In gaining this information, the trial court may consider reports of probation officers, police reports, affidavits, and other information including his own observations of the defendant. A presentence investigation has nothing to do with the issue of guilt. The rules governing due process with respect to the admissibility of evidence are not the same in a presentence hearing as in a trial in which guilt or innocence is the issue. . . ."

Citing and quoting from *State v. Rose*, 183 Neb. 809, 164 N.W.2d 646 (1969).

In *State v. Porter*, 209 Neb. 722, 723, 310 N.W.2d 926, 927 (1981), we stated:

By the very nature of a presentence investigation report, it is necessary to rely to a great extent upon hearsay

information. Furthermore, § 29-2261(3) provides in part that a presentence investigation and report shall include "any other matters that the probation officer deems relevant or the court directs to be included." We have held on numerous occasions that before pronouncing sentence a trial judge has broad discretion in the source and type of evidence he may use to assist him in determining the kind and extent of punishment to be imposed within the limits fixed by statute.

The district court was informed in a diplomatic and not so diplomatic manner concerning the nature of Dillon's objection to the affidavit as a part of the presentence report. In view of the objection to the affidavit, an objection which we construe to be directed to the relevancy of the affidavit, we conclude that Dillon's counsel protected Dillon's interests and rights attendant to a sentence hearing. Moreover, use of an affidavit for the purpose of sentencing is not objectionable, provided the affidavit contains information relevant to a sentence to be imposed. See *State v. Goodpasture, supra.* Whether the affidavit in the present case contained irrelevant information, we need not decide, for there is no indication that the sentencing judge considered the affidavit in determining the sentence imposed on Dillon. We believe, based on analogous application of a principle long established in Nebraska, the district court disregarded irrelevant information, if any, contained in the affidavit in question. Cf. *Gibson v. City of Lincoln,* 221 Neb. 304, 376 N.W.2d 785 (1985) (appellate application of the principle or "presumption" that a trial court considers only relevant and admissible evidence in a bench trial). Cf., also, *State v. Tomes,* 218 Neb. 148, 352 N.W.2d 608 (1984). Dillon's claim of ineffective assistance of counsel is without merit.

Dillon's next assignment of error is that the court abused its discretion by imposing an excessive sentence of imprisonment. At the sentence hearing Dillon's lawyer remarked that Dillon "did assist in some small way with moving the fire hoses or something else while [the victim] was being moved from the house." During oral argument before this court, counsel reiterated Dillon's assistance in curtailing the conflagration and commented: "I think there is also evidence in the record that

Mr. Dillon stayed near the house afterwards . . . he assisted the fire department and did assist the ambulance personnel that did arrive." Given the nature of the circumstances surrounding the sexual assault, such as Dillon's forcible entry into the victim's home in the middle of the night, his choking the victim until she lost consciousness and leaving the unconscious and injured victim alone in an isolated and burning house, and his Nero-like conduct in fiddling around while the home burned with the victim inside, we cannot say that the district court abused its discretion in sentencing Dillon to imprisonment for the term specified. The brief glimmer of Dillon's civic assistance in moving a firehose is minuscule, when measured against the enormity of the crime committed by Dillon and its surrounding circumstances. The atrocity annihilates assistance as any availing aspect affecting the extent of the sentence to be imposed in this case. The sentence imposed on Dillon, imprisonment for 16 to 49 years, is within the statutory limits. This court has consistently held that, in the absence of an abuse of discretion, a sentence imposed within statutory limits will not be disturbed on appeal. See *State v. Last*, 212 Neb. 596, 324 N.W.2d 402 (1982). We find no abuse of discretion regarding the sentence imposed in this case. Dillon's contention that the sentence is excessive is meritless.

AFFIRMED.