STATE OF NEBRASKA, APPELLEE, V. CHARLES L. DILLON, APPELLANT.

398 N.W.2d 718

Filed January 2, 1987.   No. 86-545.

Richard Scott, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Shanahan, J.

After an examination of the verified motion of Charles L. Dillon, as well as an examination of the files and records in Dillon's case, the district court declined to grant an evidential hearing on the motion and denied postconviction relief to Dillon. See Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1985) (postconviction proceedings). We affirm.

Dillon claims he has been denied due process of law, guaranteed by Neb. Const. art. I, § 3, and U.S. Const. amend. XIV, concerning his nolo contendere plea entered to the charge of first degree sexual assault. Neb. Rev. Stat. § 28-319(1)(a) (Reissue 1985). As the result of his nolo contendere plea, Dillon was convicted and sentenced to not less than 16 nor more than 49 years in the Nebraska Penal and Correctional Complex.

The factual background for Dillon's conviction is found in our opinion disposing of Dillon's direct appeal, *State v. Dillon*, 222 Neb. 131, 382 N.W.2d 353 (1986).

Initially, Dillon was charged with four felonies which occurred on November 1, 1984, namely, attempted first degree murder, first degree arson, burglary, and first degree sexual assault (forcible). Dillon was arraigned in the district court on February 11, 1985, and entered a not guilty plea to all four felonies charged. Sometime between arraignment and "two or three days" before Dillon's next court appearance on March 7, there were plea negotiations involving Dillon personally, his attorney, and the county attorney, during which, according to Dillon, "[W]e worked out our agreement, you know, a verbal agreement," whereby Dillon would plead to "breaking and

entering and theft," but "They brought this affidavit in, bingo [the county attorney] says . . . we will take the sex offense charge and that is because we've got this [affidavit]." The affidavit mentioned by Dillon was the "affidavit from a Kansas woman who stated that, in August 1983, she was forcibly sexually assaulted by Dillon." 222 Neb. at 133, 382 N.W.2d at 355.

On March 7 Dillon, with his lawyer, appeared before the district judge, who was informed that there had been plea negotiations and remarked: "I assume there has been some agreement between the State and the defendant." The county attorney stated the plea arrangement for disposition of the charges against Dillon, namely: In exchange for Dillon's plea of nolo contendere to the charge of forcible sexual assault, the State agreed to dismiss the other pending felony charges (attempted murder, arson, and burglary). The county attorney did not state or indicate any position or views regarding a possible sentence on Dillon's conviction. After acknowledging the plea arrangement which the county attorney had described to the court, Dillon entered his nolo contendere plea to first degree sexual assault. In accordance with *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986), the court then determined that Dillon's nolo contendere plea was intelligently, voluntarily, and understandingly made; concluded that Dillon had validly waived the rights specified in *Irish*; found a factual basis for Dillon's plea; and accepted Dillon's plea of nolo contendere to first degree sexual assault.

Dillon's due process claim is founded on the initial plea bargain to dispose of Dillon's case on the basis of "breaking and entering and theft" charges and the county attorney's later withdrawal of that agreement before Dillon's plea.

In the main, Dillon relies on *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), which involved a guilty plea entered on a prosecutor's promise to refrain from recommending a sentence to be imposed on Santobello. At the hearing for sentencing, the prosecutor recommended that Santobello receive the maximum sentence. The sentencing court, disclaiming any influence by the prosecutor's recommendation, imposed the maximum penalty under New

York law. The U.S. Supreme Court, considering "fairness in securing agreement between an accused and a prosecutor," 404 U.S. at 261, and "the interests of justice," 404 U.S. at 262, stated:

> [The plea arrangement] phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

404 U.S. at 262.

Although Dillon may envision some principle of contract law entitling him to specific enforcement of a plea arrangement, we find the words of the U.S. Supreme Court appropriate: "[W]e do not deal here with notions of offer, acceptance, consideration, or other concepts of the law of contracts. We deal with constitutional law." *Brewer v. Williams*, 430 U.S. 387, 401 n.8, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977).

In *State ex rel. Fortner v. Urbom*, 211 Neb. 309, 318 N.W.2d 286 (1982), this court adopted the following principle: The State may withdraw from a plea arrangement at any time prior to, but not after, actual entry of the defendant's guilty plea or before the defendant's other action constituting detrimental reliance on the plea arrangement. See *Shields v. State*, 374 A.2d 816 (Del. 1977).

Dillon has failed to demonstrate a lack of fundamental fairness, that is, a denial of due process, regarding the plea arrangement and his nolo contendere plea. First, Dillon has not shown in what manner the State has failed to fulfill its part of the plea arrangement reached with Dillon. Second, the record conclusively establishes, and Dillon does not deny, that the initial plea arrangement was withdrawn before Dillon entered his nolo contendere plea. Third, Dillon does not show that he, relying on the initial plea arrangement, took any action or refrained from acting in reference to his eventual nolo contendere plea. Dillon's statements about plea negotiations

clearly establish that the change in the State's position occurred before Dillon had taken any action at all. Dillon's eventual action, including his nolo contendere plea, was taken after notice that any prospective nolo contendere plea, as ultimately entered on March 7, related to the charge of first degree sexual assault. Moreover, Dillon's nolo contendere plea was the result of the second and distinctly new plea arrangement extended by the State and was not a product of the first plea arrangement withdrawn by the State. As determined by the district court, Dillon intelligently, voluntarily, and understandingly entered his nolo contendere plea to the charge of first degree sexual assault. Accordingly, Dillon was not coerced in his acceptance of the State's altered and revised plea arrangement. We conclude that Dillon has not been denied due process of law concerning his nolo contendere plea entered pursuant to the plea arrangement in this case.

A motion for postconviction relief cannot be used to secure review of issues which have already been litigated on direct appeal, or which were known to the defendant and counsel at the time of trial and which were capable of being raised, but were not raised, in the defendant's direct appeal. *State v. Hurlburt*, 221 Neb. 364, 377 N.W.2d 108 (1985). In an appeal involving a proceeding for postconviction relief, the trial court's findings will be upheld unless such findings are clearly erroneous. *State v. Williams, ante* p. 114, 396 N.W.2d 114 (1986). The decision and judgment of the district court are correct.

AFFIRMED.