STATE OF NEBRASKA, APPELLEE, V. TERRANCE L. JOHNSON, APPELLANT.

497 N.W.2d 28

Filed March 12, 1993.    No. S-92-179.

Alan G. Stoler for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.

Terrance Johnson appeals his district court convictions for first degree murder and use of a firearm to commit a felony. Johnson was sentenced to life imprisonment for the murder conviction, and a consecutive sentence of 5 to 10 years' imprisonment for the firearm conviction. We affirm.

On June 18, 1991, when he was 15 years old, Johnson shot his friend's uncle with a .22-caliber rifle. The victim, Reginald Porchia, subsequently died from the gunshot wound. Police later questioned Johnson, his twin brother, and the victim's nephew, all of whom were present at the incident. Johnson was interviewed at approximately 6 a.m. at the police station. After waiving his rights and after being informed that his twin had revealed him as the gunman, Johnson confessed to the shooting. He then agreed to make a taped statement, on which he again waived his rights and reiterated his earlier confession. Johnson had not spoken to his mother or an attorney before waiving his rights.

Prior to trial Johnson requested that the district court transfer the case to the separate juvenile court. In a detailed order the district court denied the motion. Johnson then moved to suppress his confession, alleging that it had not been made knowingly, voluntarily, and intelligently. This motion was also denied.

On the day of trial, pursuant to a plea agreement, Johnson offered to plead guilty to a reduced charge of second degree murder and use of a firearm in the commission of a felony. However, because Johnson denied intending to kill the victim, the court rejected the plea. After further discussions between Johnson, his counsel, and the judge, the prosecutor withdrew the plea agreement. The charge was reinstated to first degree murder and Johnson was convicted by a jury of both the murder and weapons charges. The district court then denied Johnson's motion to enforce the plea agreement or for new

trial.

Restated, Johnson alleges that the district court erred by (1) denying his motion to transfer the case to the juvenile court; (2) refusing to accept his guilty plea, on which he had detrimentally relied; (3) allowing the prosecution to withdraw the plea agreement after Johnson had attempted to plead guilty; and (4) finding that Johnson's confession was made voluntarily.

Johnson first asserts that the district court erred when it refused to transfer his case to the separate juvenile court pursuant to Neb. Rev. Stat. § 43-261 (Reissue 1989). We review the denial of a motion to transfer to juvenile court for an abuse of discretion. *State v. Garza*, 241 Neb. 934, 492 N.W.2d 32 (1992); *State v. Doyle*, 237 Neb. 60, 464 N.W.2d 779 (1991). The general rule is that the district court, upon request, shall transfer a juvenile criminal case to the juvenile court unless there is a sound basis for retaining it. *Doyle, supra.* Furthermore, the statutory factors used to determine whether to transfer the case are weighed in a practical, nonarithmetic fashion, balancing the needs of society with those of individual justice. Neb. Rev. Stat. § 43-276 (Reissue 1988); *Garza, supra*; *State v. Alexander*, 215 Neb. 478, 339 N.W.2d 297 (1983).

The record is abundantly clear that the district court did not abuse its discretion in denying the motion to transfer. Although Johnson was 15 years old at the time of the shooting, the severity of the crime and the public's security weighed against the transfer. The juvenile court could retain jurisdiction over Johnson only until his 19th birthday—less than three years from the time of trial. See Neb. Rev. Stat. §§ 43-247 and 43-2101 (Reissue 1988). Testimony at the hearing on the motion further indicated that the juvenile court system would be ill-suited to effectively rehabilitate Johnson.

In its order the district court painstakingly addressed each statutory factor by which transfer is determined. We find no abuse of discretion in the court's denial of the motion to transfer. Johnson's first assignment of error is without merit.

Johnson next argues that the district court erred in refusing to accept his guilty plea to the charge of second degree murder. Johnson claims that his plea was knowing, intelligent, and voluntary, and therefore should have been accepted.

"It is well established that a criminal defendant has no absolute right to have his or her plea of guilty or nolo contendere accepted even if the plea is voluntarily and intelligently made." *State v. Perez*, 235 Neb. 796, 801, 457 N.W.2d 448, 453 (1990); *State v. Leisy*, 207 Neb. 118, 295 N.W.2d 715 (1980). See, also, *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977), *overruled on other grounds, State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1976). Furthermore, the trial court is given discretion as to whether to accept a guilty plea; this court will only overturn that decision where there is an abuse of discretion. *Perez, supra*; *Leisy, supra*.

In order to support a finding that a guilty plea was entered intelligently, voluntarily, and understandingly, the record must establish, among other things, that a factual basis for the plea exists. *State v. Sianouthai*, 225 Neb. 62, 402 N.W.2d 316 (1987); *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986). The record before us establishes that no factual basis existed for Johnson's guilty plea.

Prior to trial Johnson offered a plea of guilty to second degree murder. The district court judge explained the results attendant to such a plea, including a recitation of Johnson's constitutional rights. The judge then attempted to establish whether a factual basis for the plea existed. Under Neb. Rev. Stat. § 28-304 (Reissue 1989), a person commits second degree murder if "he causes the death of a person *intentionally*, but without premeditation." (Emphasis supplied). When the judge questioned Johnson about the shooting, the following discussion occurred:

THE COURT: Before I can accept your plea of guilty, Mr. Johnson, I have to be certain there is a sufficient factual basis for your plea. Will you tell me in your own words what you did to commit these two crimes . . . ?

THE DEFENDANT: Well, I shot somebody.

. . . .

THE DEFENDANT: Somebody pressured me into it, and I [sic] just happened — he just handed [the gun] to me and told me to do it and if I didn't, he said he would beat me up so I done it.

. . . .

THE COURT: I certainly don't want to pressure you into a plea, Mr. Johnson, but you've told me that it's your desire to plead guilty to 2nd degree murder. A person commits 2nd degree murder if he causes the death of another person intentionally. Did you cause the death of Mr. Porchia — Reginald Porchia intentionally?

THE DEFENDANT: No.

THE COURT: When you fired a gun at his midsection and hit him in the head, you didn't intent [sic] to kill him?

THE DEFENDANT: No.

THE COURT: What did you intend?

THE DEFENDANT: Just intended to shoot him. I didn't really intend to kill him.

Following this exchange, Johnson's counsel restated willingness to enter the plea. However, the prosecution expressed Johnson's doubt as to proceeding with the agreement. The judge then stated that he was unwilling to accept the plea at that point.

After conferring with his client, Johnson's counsel again expressed the desire to go forward with the plea agreement, stating that although Johnson felt that he was pressured into shooting the victim, the act was also attributable to his own volition. The judge again expressed doubt that a factual basis for second degree murder had been shown. The prosecution then withdrew the plea agreement and the charge was reinstated to first degree murder.

Based on the foregoing facts, it is clear that the record did not establish a sufficient factual basis to sustain the guilty plea. Neither at the plea hearing nor in any of the previous proceedings did Johnson state that he intended to kill the victim. The district court did not abuse its discretion in refusing to accept the plea.

Johnson next argues that the court erred by allowing the prosecution to withdraw the plea agreement. We disagree.

In *State v. Dillon*, 224 Neb. 503, 398 N.W.2d 718 (1987), we stated: "The State may withdraw from a plea arrangement at any time prior to, but not after, actual entry of the defendant's guilty plea or before the defendant's other action constituting detrimental reliance on the plea arrangement." *Id.* at 506, 398

N.W.2d at 720. No guilty plea was ever entered in the district court. Although a plea was *tendered* to the court, that plea was rejected for lack of a factual basis. The prosecution was thus free to withdraw the plea unless Johnson detrimentally relied on the arrangement. He did not.

Johnson did not compromise his position by attempting to plead guilty to second degree murder. The only action Johnson took was the tendering of his plea; nothing in that action prejudiced him in any way. He argues, however, that because he "fully performed" his part of the agreement, the prosecution should not be able to shirk its obligation. We first note that principles of contract law do not govern enforcement of a plea arrangement prior to the acceptance of the plea. *Dillon, supra.* Furthermore, if any party "breached" the agreement, it was Johnson. Johnson agreed to plead guilty in exchange for a reduction in the charge. When questioned as to the crime, however, he repeatedly denied one of the necessary elements for that charge. Such action hardly constitutes "full performance." Johnson's third assignment of error is without merit.

Johnson's last argument focuses on the district court's denial of his motion to suppress his confession. Johnson argues that his age, the time he gave the confession, being confronted with his brother's accusation, and his lack of contact with his mother all combined to prevent his confession from being knowing, intelligent, and voluntary. Again, we disagree.

An appellate court, when reviewing the ruling on a motion to suppress, will uphold the trial court's findings of fact unless those findings are clearly erroneous. *Garza, supra* (citing *State v. Coleman*, 241 Neb. 731, 490 N.W.2d 222 (1992)). Moreover, when making this determination, we do not reweigh the evidence or resolve evidentiary conflicts, but recognize the trial court as the finder of fact and consider that the trial court has observed the witnesses. *State v. Walker, ante* p. 99, 493 N.W.2d 329 (1992); *Garza, supra.* Thus, the trial court's factual finding that a confession was voluntary will only be disturbed on appeal if clearly wrong. *Garza, supra.*

Whether a confession, statement, or admission was made knowingly, intelligently, and voluntarily depends on the totality of the circumstances. *Stewart, supra.* See, also, *State v. Melton,*

239 Neb. 506, 476 N.W.2d 842 (1991). Among those circumstances to be considered are the accused's minority and the role of the accused's parents. However, these are merely factors to be given consideration and are not dispositive as to the knowingness, intelligence, and voluntariness of the confession. *State v. Smith*, 203 Neb. 64, 277 N.W.2d 441 (1979); *Stewart, supra*; *State v. Lytle*, 194 Neb. 353, 231 N.W.2d 681 (1975).

The record is sufficient to support the trial court's finding that Johnson's confession was knowing, intelligent, and voluntary. Although the hour was late when the statement was given, Johnson told the interviewing officer that he was "awake" while being interviewed. Johnson never complained during the interview, expressed a desire to stop, or stated that he did not understand what was taking place. The record also indicates that although Johnson did not speak to his mother before waiving his rights and confessing, his mother was aware that he had been taken to the station. Moreover, Johnson stated that he had not been drinking or taking drugs before the interview and that he could both read and write.

Johnson was *Mirandized* twice before giving the taped confession, as was evidenced by a written "Rights Advisory Form" that was completed in his presence. He also stated that he had not been coerced or made promises in exchange for making a statement. While it is true that being implicated by one's brother might shake a defendant, such an occurrence, of itself, does not run afoul of the Constitution. Johnson was informed of his right to remain silent, his right to an attorney, and his other constitutional rights. Nothing in the record shows that the district court erred by finding that Johnson's decision to waive those rights was knowing, intelligent, and voluntary.

Based on the record before us and our standard of review, we cannot say that the trial court was clearly wrong in its denial of Johnson's motion to suppress. As was the case with Johnson's other arguments, his final assignment of error is without merit. We therefore affirm the district court.

AFFIRMED.