STATE OF NEBRASKA, APPELLEE, V. RAYMOND D. FLANAGAN,
APPELLANT.

553 N.W.2d 167

Filed July 23, 1996.   No. A-95-577.

John C. Vanderslice for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

MILLER-LERMAN, Chief Judge, and SIEVERS and MUES, Judges.

MILLER-LERMAN, Chief Judge.

Raymond D. Flanagan appeals his convictions and the sentences imposed by the district court for Platte County for possession of a controlled substance with intent to deliver, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1994),

a Class III felony; possession of a controlled substance, in violation of § 28-416(3), a Class IV felony; driving while under the influence of alcoholic liquor, second offense, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 1993), a Class W misdemeanor; and no proof of financial responsibility, in violation of Neb. Rev. Stat. § 60-570 (Reissue 1993), a Class II misdemeanor. Flanagan asserts that the district court erred in overruling his motion to suppress evidence seized during a search of his vehicle and in imposing an excessive sentence as to the possession of a controlled substance conviction. For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

Early in the morning of August 12, 1994, Columbus police officer Charles Brooks noticed a vehicle with a loud muffler traveling westbound on 8th Street. Brooks, traveling eastbound on the same street, looking at his rearview mirror, observed the vehicle cross over the centerline. After making a U-turn, Brooks stopped behind the vehicle as it waited at a red light. Flanagan, the driver of the vehicle, appeared to be preoccupied with something in the car and sat through a green light. After Flanagan proceeded through the next green light, Brooks noticed that the right wheels of Flanagan's car went off of the pavement. Brooks then stopped Flanagan and subsequently arrested him for driving while under the influence of alcoholic liquor and for no proof of financial responsibility.

Officer Gregory Sealock searched Flanagan for weapons and personal belongings after the arrest at the scene. He discovered a round object in Flanagan's pocket, which, it was later determined, contained methamphetamine. After Flanagan was taken from the scene by Sealock, Brooks began taking an inventory of the contents of Flanagan's vehicle, during which time he discovered a brown paper bag in a yellow plastic clothes hamper in the backseat. Inside the paper bag were three 1-gallon size Ziploc baggies, each of which was later determined to contain marijuana.

Prior to trial, Flanagan filed a motion to suppress evidence seized from his person and from his vehicle and any other

evidence obtained as a result of his detention and subsequent arrest. The trial court denied Flanagan's motion. The trial court made no specific findings regarding the basis for its denial.

Flanagan's case was tried to a jury. Flanagan objected to the admission of the challenged evidence at trial. He was convicted on all four counts and later sentenced as follows: 3 to 5 years' imprisonment on Count I, possession of a controlled substance with intent to deliver; 1 to 3 years' imprisonment on Count II, possession of a controlled substance; 45 days in jail, a fine of $500, and his driver's license to be suspended and revoked for 1 year following his release from the Nebraska Department of Correctional Services on Count III, driving while under the influence of alcoholic liquor. On Count IV, no proof of financial responsibility, Flanagan was fined $100.

## ASSIGNMENTS OF ERROR

On appeal, Flanagan complains of the denial of his suppression motion only with regard to the search of his vehicle and the resultant seizure of the marijuana. He also argues that his sentence on Count II is excessive.

## ANALYSIS

*Motion to Suppress.*

A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Osborn*, 250 Neb. 57, 547 N.W.2d 139 (1996).

We note that in *Osborn*, released after the date of Flanagan's trial, the Nebraska Supreme Court stated that it is a requirement for district courts to articulate in writing or from the bench their general findings when granting or denying a motion to suppress. The record in this case does not contain the basis of the trial court's finding in overruling the motion to suppress. Following our review, we conclude that the trial court properly denied the motion to suppress and that this appeal may

be resolved on the basis that the contraband was seized as a result of a permissible inventory search.

■ An inventory search is permissible after an arrest where the search is preceded by lawful custody of the vehicle and where the search is conducted pursuant to standardized inventory criteria or established routine. *Florida v. Wells*, 495 U.S. 1, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990); *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976); *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544 (1993).

Excerpts from the Columbus Police Department policy manual admitted into evidence regarding the towing, impounding, and inventorying of vehicles provide as follows:

> The policy of the Columbus Police Department requires that when a driver of a vehicle is taken into custody[,] the vehicle must be secured since the owner/driver is no longer free to care for his property. The driver/owner will be given an opportunity to state his preference on the disposition of his vehicle. He must be able to make an intelligent and knowing decision immediately; and the requested action must be able to be accomplished in a reasonable amount of time. Normally, a request to wait until another party can respond to take custody of the vehicle will be denied because the officer cannot be detained for extended periods. The option to leave the vehicle parked at the scene will be weighed against the safety of the vehicle and the probability of property loss if so parked. Further, no vehicle will be left where it will be illegally parked.

> . . . .

> 4. Towing Situations:

> . . . .

> f. Unattended Traffic Hazard/Violation of Law: Officers may tow any motor vehicle found on the public street or grounds unattended by the owner/operator that constitutes a traffic hazard or is parked in such a manner as to be in violation of the law.

. . . .

### 6. Towing Procedure

. . . .

c. Inventory: When a vehicle, per owner's request, is not towed nor impounded, there is no authority for an inventory of the vehicle and contents. . . .

. . . .

8. Impound/Recovery Report: The vehicle impound/recovery report is to be completed on all vehicles towed or impounded at the request of a Police Officer for the purpose of establishing protective custody of the vehicle and any property in the vehicle. . . .

a. In all cases where a vehicle is towed/impounded an impound/recovery report will be completed, along with a complete vehicle inventory.

. . . .

d. Instructions for vehicle inventory.

1. The inventory should be conducted in the presence of a witness when practicable.

2. The interior of the vehicle should be carefully examined, including under the seats, the trunk, and all compartments, to determine if items of value are present. All containers that can be easily opened found in the vehicle should be opened.

Flanagan argues generally that the department policy was not followed and that the search was improper under *State v. Filkin, supra*. In particular, Flanagan argues that the department policy was not followed because he was not given the opportunity to state his preference on the disposition of his vehicle. We do not agree. At the suppression hearing, Brooks stated that Flanagan wanted to drive the vehicle home "from the very beginning of the stop." This expression of preference meets the department policy, and under the circumstances, Brooks' refusal to let Flanagan drive the vehicle home was justified.

Our review of the record shows that the department policy states that the driver/owner must be able to make "an intelligent and knowing decision immediately." At the suppression hearing, Brooks testified that he believed Flanagan "to be intoxicated and

not capable of making a decision that wouldn't leave me liable for his vehicle . . . ."

It is apparent from the record that the trial judge found Brooks' testimony credible and that such testimony amounted to Brooks' assessment that Flanagan's proposal that he drive his vehicle home was not feasible and, furthermore, that Flanagan was not able to make an intelligent and knowing decision. Under established routine, such conclusion justifies towing the vehicle and an attendant inventory search. Under such circumstances, the department policy was not violated.

Flanagan directs our attention to that portion of the policy which provides that "[w]hen a vehicle, per owner's request, is not towed nor impounded, there is no authority for an inventory of the vehicle and contents." Flanagan argues that by not allowing him to make arrangements for his vehicle that would preclude towing, Brooks "essentially 'authorized' himself to conduct an inventory" of the vehicle. Brief for appellant at 29. Thus, according to Flanagan, the towing and inventory search were merely pretexts to search the vehicle for drugs. In this connection, Flanagan points to evidence that Brooks had previous contacts with Flanagan in another drug case.

We have reviewed the record and find no evidence to indicate that Brooks, who was following standardized procedures, was acting in bad faith or for the sole purpose of investigation. Rather, the evidence indicates and the trial court apparently so determined that Brooks believed the police department was potentially responsible for the vehicle and its contents and, accordingly, took steps to secure the property.

■ Furthermore, the U.S. Supreme Court has recently iterated, in the context of administrative and inventory searches, that ulterior motives of an officer do not invalidate police conduct that is objectively justifiable. *Whren v. U.S.*, ____ U.S. ____, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).

Flanagan asserts that the department policy was impermissibly flexible. We disagree. Any discretion afforded the Columbus police was exercised in light of standardized criteria related to the feasibility and appropriateness of parking and locking a vehicle or arranging for a third party to drive it rather

than impounding it. See *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987).

Finally, Flanagan claims that the location of his vehicle did not present a traffic hazard. At the suppression hearing, Brooks testified that Flanagan's vehicle was not parked in a no-parking area and that he would not have towed it if he had seen someone else parked there. However, Brooks also testified that several inches of the vehicle remained on the driving portion of the road and that he was concerned that it posed a "potential," although not a "serious," hazard to other drivers. The decision to tow the vehicle in such a situation comports with the department policy.

Because the search of Flanagan's vehicle was a permissible inventory search, the trial court was correct in overruling Flanagan's motion to suppress the evidence obtained from the vehicle. Flanagan's first assignment of error is without merit.

*Excessive Sentence.*

Flanagan was sentenced to 3 to 5 years' imprisonment on the possession with intent to deliver a controlled substance conviction; 1 to 3 years' imprisonment on the possession of a controlled substance conviction; 45 days in jail, a fine of $500, and his driver's license to be suspended and revoked for 1 year following his release from the Nebraska Department of Correctional Services for the driving while under the influence of alcoholic liquor, second offense, conviction; and fined $100 on the no proof of financial responsibility conviction. Flanagan argues that because his conviction related to the marijuana should be overturned, his sentence related to his possession of methamphetamine should be modified. Because his first assignment of error was found to be without merit, this argument also fails. Flanagan also asserts that in sentencing him, the district court obviously overlooked his many positive qualities. In this regard, Flanagan indicates that he has a good employment history and provides support for his children.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Moore, ante* p. 564, 547 N.W.2d 159 (1996). In imposing a sentence, a judge should consider the defendant's age, mentality, education, experience, and social and cultural

background, as well as his or her past criminal record or law–abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *Id*.

The record reflects that Flanagan has prior convictions for drug–related offenses and for driving while under the influence of alcoholic liquor. He has undergone drug treatment and relapsed. According to the presentence investigation report, Flanagan is thousands of dollars in arrears in child support. Given Flanagan's history, the trial court did not abuse its discretion in the sentence imposed, which was within statutory limits.

Because we find that (1) the trial court did not err in admitting evidence obtained from the search of Flanagan's vehicle and (2) there was no abuse of discretion in the sentence imposed on Flanagan, the rulings and judgment of the trial court are affirmed.

AFFIRMED.