STATE OF NEBRASKA, APPELLEE, V.
TROY J. DIMMITT, APPELLANT.
560 N.W.2d 498

Filed February 11, 1997.   No. A-96-641.

452

Patrick L. Neid for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and SIEVERS, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Troy J. Dimmitt appeals from his convictions and sentences for second degree arson and burglary. On appeal, Dimmitt challenges the district court's order denying his motion to transfer the case to juvenile court, the district court's order denying him discovery of the prior criminal histories of several prosecution witnesses, the district court's order consolidating his trial with that of his codefendant, the sufficiency of the evidence to sustain his convictions, and the sentences imposed by the district court. Finding no merit to Dimmitt's assignments of error, we affirm.

## II. BACKGROUND

Dimmitt was charged by information on February 6, 1996, with one count of burglary and one count of second degree arson. The events which led to the charges occurred during the late night and early morning hours of November 23 and 24, 1995. According to the evidence at trial, Dimmitt was present when several of his friends discussed breaking into a home in Grand Island, Nebraska, when the occupants were known to be out of town. Dimmitt drove three of his friends to the house, and one of them threw a brick through a glass door. The group then proceeded to enter the house, and some property was removed. The evidence is not clear as to whether or not Dimmitt actually removed any property.

During the early morning hours of November 24, 1995, Dimmitt and two of his friends returned to the house. According to the evidence at trial, Dimmitt entered the house carrying a gas can. Dimmitt then proceeded to pour gasoline throughout the main floor of the house and to light the house on fire. By the time fire personnel responded to the fire, the house was destroyed.

Dimmitt was 16 years old at the time of the alleged events. He had turned 17 by the time the information was filed charging him with the crimes. On February 9, 1996, Dimmitt filed a motion requesting the district court to waive jurisdiction and transfer the case to juvenile court. After a hearing on February 26, the court denied the motion.

On February 29, 1996, Dimmitt filed a motion for discovery requesting, inter alia, information concerning prior criminal records of various juveniles who were to be prosecution witnesses. On March 11, the district court denied that portion of the discovery motion which sought criminal records of juvenile witnesses and granted the remainder of the motion.

On March 12, 1996, the State filed a motion seeking to consolidate Dimmitt's trial with that of his codefendant. On March 26, the district court granted the motion. The two cases were tried together before a jury on April 8 through 10. Dimmitt was found guilty of burglary and second degree arson.

On April 22, 1996, Dimmitt filed a motion for new trial. The district court overruled the motion on May 7. On May 14, the

district court sentenced Dimmitt to consecutive sentences of 1 to 2 years' imprisonment for the burglary conviction and 5 to 7 years' imprisonment for the arson conviction. This timely appeal followed.

### III. ASSIGNMENTS OF ERROR

On appeal, Dimmitt assigns six errors, which we have consolidated for discussion to five. Dimmitt asserts that (1) the district court erred in denying his motion to transfer the case to juvenile court, (2) the district court erred in denying his motion for discovery of prior criminal histories of several prosecution witnesses, (3) the district court erred in sustaining the State's motion to consolidate his trial with that of his codefendant, (4) the verdict is not supported by sufficient evidence and is contrary to law, and (5) the sentences imposed by the district court are excessive.

### IV. STANDARD OF REVIEW

The decision whether to waive jurisdiction and transfer a juvenile's case to juvenile court is within the discretion of the district court. *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996); *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Ice*, 244 Neb. 875, 509 N.W.2d 407 (1994); *State v. Johnson*, 242 Neb. 924, 497 N.W.2d 28 (1993); *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990). Unless granted to a defendant by law as a matter of right, discovery is within the discretion of the trial court, whose ruling will be upheld on appeal absent an abuse of discretion. *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992). A trial court's ruling on a motion for consolidation of properly joinable prosecutions will not be disturbed on appeal absent an abuse of discretion. *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995). An appellate court will not disturb a sentence imposed by the district court which is within the statutory limits, absent an abuse of discretion. *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996); *State v. Bensing*, 249 Neb. 900, 547 N.W.2d 464 (1996).

A judicial abuse of discretion exists when the reasons or rulings of a trial court are clearly untenable, thereby unfairly depriving a litigant of a substantial right or a just result in matters properly submitted for judicial disposition. *State v. Mantich, supra.*

In determining whether a conviction in a jury trial is supported by sufficient evidence, an appellate court will not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented to the jury. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996); *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996); *State v. Mantich, supra.*

## V. ANALYSIS

### 1. TRANSFER

Dimmitt filed a motion requesting the district court to waive jurisdiction and transfer his case to juvenile court. Dimmitt was 16 years old at the time of the alleged events and had turned 17 by the time the information was filed charging him with these crimes. Additionally, the record indicates that Dimmitt had voluntarily moved out of his parents' home several months prior to the alleged incidents, was not attending school, and was employed sporadically.

■ The decision whether to waive jurisdiction and transfer a case to juvenile court is governed by Neb. Rev. Stat. § 43-261 (Reissue 1993), which provides in part: "In deciding the motion [to transfer to juvenile court] the court shall, after considering the evidence and the reasons presented by the parties and the matters required to be considered by the county attorney pursuant to section 43-276, transfer the case unless a sound basis exists for retaining jurisdiction." According to Neb. Rev. Stat. § 43-276 (Reissue 1993), the factors to be considered include:

(1) The type of treatment [the] juvenile would most likely be amenable to; (2) whether there is evidence that the alleged offense included violence or was committed in an aggressive and premeditated manner; (3) the motivation for the commission of the offense; (4) the age of the juvenile and the ages and circumstances of any others involved in the offense; (5) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court, and, if so, whether such offenses were crimes against the person or relating to property, and other previous history of anti-social behavior, if any, including any patterns of physical

violence; (6) the sophistication and maturity of the juvenile as determined by consideration of his or her home, school activities, emotional attitude and desire to be treated as an adult, pattern of living, and whether he or she has had previous contact with law enforcement agencies and courts and the nature thereof; (7) whether there are facilities particularly available to the juvenile court for treatment and rehabilitation of the juvenile; (8) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in custody or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; and (9) such other matters as the county attorney deems relevant to his or her decision.

See, also, *State v. Ice*, 244 Neb. 875, 509 N.W.2d 407 (1994); *State v. Doyle*, 237 Neb. 944, 468 N.W.2d 594 (1991).

In weighing the required factors, there is no mathematical formula required in the court's consideration of the statutory criteria. *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996). It is a balancing test by which the need for public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id.*; *State v. Johnson*, 242 Neb. 924, 497 N.W.2d 28 (1993). In order for the district court to retain jurisdiction, the court does not need to resolve every factor against the juvenile. *State v. Mantich, supra*; *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994).

In the present case, it is apparent that the district court properly considered the statutory factors. The record indicates that Dimmitt was 16 years old at the time of the events and had turned 17 by the time the information was filed against him, which indicates that the juvenile court system would have had only approximately 2 years of jurisdiction for treatment and rehabilitation of Dimmitt. Additionally, there is evidence in the record that the arson was committed to conceal the identities of those individuals who committed the burglary. Dimmitt had demonstrated a desire to be treated as an adult, as evidenced by the fact that he voluntarily moved out of his parents' home, quit school, and sought and secured employment on his own, although only sporadically. Dimmitt had two other legal matters

pending before the court at the time of the transfer hearing, a shoplifting citation and a trespassing citation. The nature of the burglary and arson offenses demonstrated a complete disregard for the victims' property and the safety of the Grand Island community.

We recall that the district court's decision on a motion to transfer a case to juvenile court is to be upheld absent an abuse of discretion. *State v. Mantich, supra*; *State v. Grimes, supra*; *State v. Ice, supra*; *State v. Johnson, supra*; *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990). We do not find the district court's decision to be clearly untenable, unfairly depriving Dimmitt of a substantial right or a just result in this matter. See *State v. Mantich, supra*. There was a sound basis for the district court's retaining jurisdiction, and the district court did not abuse its discretion in so holding. This assigned error is without merit.

## 2. DISCOVERY

Dimmitt next contends that the district court erred by denying his request for discovery of any prior criminal histories of several prosecution witnesses. The district court denied Dimmitt's request for discovery of the criminal histories and granted the remaining discovery sought by Dimmitt.

Dimmitt cited to the district court, and also cites to this court, the U.S. Supreme Court case *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), as governing authority for the proposition that the district court was obligated to allow Dimmitt discovery of these juvenile criminal histories. In *Giglio*, the Supreme Court held that when the reliability of a particular witness may be determinative of a defendant's guilt or innocence, nondisclosure of evidence affecting the witness' credibility falls within the general rule that suppression of material evidence justifies a new trial.

The primary issue in *Giglio* concerned whether or not a prosecution witness had been offered a "deal" by the prosecution in exchange for his testimony. The witness testified that no promises had been made, and the prosecution commented during closing statements that no promises had been made to the witness. Evidence was later discovered, however, which suggested that a deal had indeed been struck between the prosecution and the witness in exchange for his testimony.

The holding in *Giglio* is not dispositive of the issue before us. *Giglio* does not address disclosure of criminal histories of witnesses, especially juvenile witnesses. *Giglio* concerned a situation where jurors were informed that no promises had been made in exchange for a material witness' testimony when, in fact, some promise had been made. Under those circumstances, the U.S. Supreme Court held that a new trial was warranted.

In Nebraska, Neb. Rev. Stat. § 29-1912 (Reissue 1995) governs what material a criminal defendant is entitled, as a matter of right, to discover. Section 29-1912 includes information about the defendant's prior criminal record, if any. Section 29-1912 does not, however, include information about the prior criminal record of any other witnesses. The Nebraska Supreme Court has held that, unless granted by law as a matter of right, discovery of information by a criminal defendant is within the discretion of the trial court. *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992).

Neb. Rev. Stat. § 27-609 (Reissue 1995) governs when a witness' prior criminal history may be used to impeach the credibility of the witness. Section 27-609(4) specifically states that evidence of juvenile adjudications is not admissible for this purpose. On appeal, the State alleges that several of the witnesses were juveniles, and Dimmitt does not challenge this assertion in his reply brief. To the extent the witnesses whose prior criminal histories were sought were juveniles, we note that the Nebraska Supreme Court has interpreted this rule to mean that it is improper to use a juvenile's criminal history to cast the juvenile as a dishonest juvenile offender in hopes of convincing the jury to disbelieve his or her testimony. *State v. Beach*, 215 Neb. 213, 337 N.W.2d 772 (1983). See *State v. Caradori*, 199 Neb. 691, 260 N.W.2d 617 (1977).

Dimmitt's brief to this court makes it clear that the only reason for which Dimmitt sought discovery of the witnesses' prior criminal histories was to attack their credibility under § 27-609. In light of the restrictions imposed by § 27-609 and the fact that Dimmitt is not statutorily entitled to discovery of this information, the district court did not abuse its discretion in denying Dimmitt's discovery request. This assigned error is without merit.

## 3. CONSOLIDATION

Dimmitt asserts that the district court erred in sustaining the State's motion to consolidate Dimmitt's trial with that of his codefendant. Dimmitt argues on appeal that the order sustaining the motion to consolidate was an abuse of discretion.

In Nebraska, a criminal defendant does not have a constitutional right to a separate trial. *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995). The right is statutory, as set out in Neb. Rev. Stat. § 29-2002 (Reissue 1995). *State v. Brunzo, supra*; *State v. Illig*, 237 Neb. 598, 467 N.W.2d 375 (1991). The right to a separate trial depends upon a showing by the party challenging consolidation that prejudice will result from a joint trial. *Id.*; *State v. Dandridge*, 1 Neb. App. 786, 511 N.W.2d 527 (1993).

The propriety of a consolidated trial involves two questions: (1) whether consolidation is proper under the statutory joinder rules and (2) whether the challenging party is entitled to a separate trial because of the prejudice which would result from an otherwise proper consolidation. *State v. Brunzo, supra*. In answer to the first question, it is well settled that criminal actions may be joined for trial if the offenses charged are based upon the same act or transaction. *Id.* See, also, § 29-2002.

The burden is on Dimmitt to demonstrate in what manner he was prejudiced by the district court's decision to consolidate his trial with that of the codefendant. See, *State v. Brunzo, supra*; *State v. Illig, supra*. Dimmitt argues that he was prejudiced because there was insufficient evidence to convict him of burglary. Dimmitt argues that the evidence produced at trial failed to establish that he removed anything from the house, but that there was evidence that the codefendant removed property. Dimmitt asserts that the joinder of the two cases was thus "clearly prejudicial." Brief for appellant at 12. The sufficiency of the evidence will be discussed more fully below, but Dimmitt has failed to carry his burden of establishing prejudice from the consolidation. As such, the district court's order consolidating the two trials was not an abuse of discretion. This assigned error is without merit.

## 4. SUFFICIENCY OF EVIDENCE

Dimmitt next asserts that his convictions are not supported by sufficient evidence and are contrary to law. Dimmitt argues that the prosecution called only one witness with respect to the burglary charge against him and that the witness specifically testified that he did not recall seeing Dimmitt remove anything from the house. Similarly, Dimmitt argues that the prosecution called only one witness with respect to the arson charge against him and that the witness was not credible because she had given a statement to the police which directly contradicted her testimony in court. Additionally, Dimmitt testified on his own behalf and directly refuted the testimony of the prosecution's witnesses.

We initially note that the district court gave an "aiding and abetting" instruction to the jury. Neb. Rev. Stat. § 28-206 (Reissue 1995) provides that any person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished the same as if he were the principal offender. The Nebraska Supreme Court has held that aiding and abetting requires some participation in a criminal act, evidenced by some word, act, or deed, and that mere encouragement or assistance is sufficient to make one an aider and abettor. *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996); *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995). When a crime requires the existence of a particular intent, an alleged aider and abettor can be held liable the same as a principal if it is shown that the aider and abettor knew that the principal possessed the required intent or that the aider and abettor himself possessed the required intent. *Id.*

██ A person may be convicted of burglary if he willfully, maliciously, and forcibly breaks and enters any real estate with intent to commit any felony or with intent to steal property of any value. Neb. Rev. Stat. § 28-507 (Reissue 1995); *State v. Zemunski*, 230 Neb. 613, 433 N.W.2d 170 (1988). Intent sufficient to support a conviction of burglary may be inferred from the facts and circumstances surrounding an illegal entry into real estate. *State v. Zemunski, supra; State v. Matz*, 226 Neb. 581, 412 N.W.2d 852 (1987); *State v. Vaughn*, 225 Neb. 38, 402 N.W.2d 300 (1987). The Nebraska Supreme Court has noted

that nocturnal entry into a building known to contain property is a circumstance from which a jury may infer an intent to steal. *State v. Matz, supra.* Additionally, the Supreme Court has held that no evidence of actual theft or asportation of property is necessary to support a burglary conviction. *Id.*; *State v. Vaughn, supra.*

The testimony at trial established that Dimmitt was present when the subject of breaking into the house was discussed. Dimmitt then drove three of his friends to the house, and the house was broken into. There was evidence that Dimmitt entered the house. The prosecution witness against Dimmitt concerning the burglary charge testified that he and Dimmitt went to the basement and got some guns and that everyone then left. The same witness later testified that he did not actually see Dimmitt take anything from the house. As noted, however, the fact that Dimmitt may not have removed anything from the house does not mean that the jury could not have inferred the requisite intent.

Second degree arson is defined as the intentional burning of a building by a criminal act. Neb. Rev. Stat. § 28-503 (Reissue 1995); *State v. McDonald*, 230 Neb. 85, 430 N.W.2d 282 (1988); *State v. Ellis*, 223 Neb. 779, 393 N.W.2d 719 (1986). One of the witnesses at trial testified that she accompanied Dimmitt and the codefendant to the house after the burglary. She testified that Dimmitt drove back to the house, carried a gas can to the house, entered the house, poured gasoline throughout the house, and bent down and lit the house on fire. The witness admitted that she told police immediately after the incident that she and Dimmitt were not at the house when it burned. She testified that everything she had previously told the police had been a lie.

We are mindful that in determining whether the evidence is sufficient to sustain a conviction in a jury trial, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented to the jury, which are within the jury's province for disposition. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996); *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996); *State v. Mantich, supra.* This is true regard-

less of whether the evidence is direct, circumstantial, or a combination thereof. *State v. Newman, supra.* Additionally, in determining the sufficiency of the evidence, the evidence is viewed in the light most favorable to the State. *State v. McBride, supra; State v. Newman, supra; State v. Mantich, supra.*

The evidence is clearly sufficient to sustain Dimmitt's burglary conviction. The evidence establishes that Dimmitt drove to the unoccupied house twice with friends and entered the house twice. On the first occasion, although the evidence does not indicate unequivocally that he removed any property, the evidence does indicate that he entered the house at night and may indicate that he removed some guns from the house. The evidence is sufficient for the jury to infer that Dimmitt had the requisite intent to commit a felony or to steal property, or at the very least that he assisted or encouraged his friends in doing so, making him an aider and abettor.

The evidence is further sufficient to sustain Dimmitt's arson conviction. The evidence establishes that Dimmitt drove to the house a second time, carried a gas can into the unoccupied house, spread gasoline around, and lit the house on fire. Dimmitt's only challenge to this evidence concerns the credibility of the witness who provided the testimony, which is not in our province to reweigh. We additionally note that, second degree arson being a Class III felony, the evidence of Dimmitt's entry into the house on the second occasion to burn the house would further support the jury's verdict concerning burglary.

The evidence is sufficient to sustain Dimmitt's convictions of burglary and arson. This assigned error is without merit.

### 5. EXCESSIVE SENTENCES

Dimmitt finally asserts that the district court imposed excessive sentences for his two convictions. The court sentenced Dimmitt to consecutive terms of 1 to 2 years' imprisonment for the burglary conviction and 5 to 7 years' imprisonment for the arson conviction.

Burglary is a Class III felony. § 28-507(2). Second degree arson is also a Class III felony. § 28-503(3). We also note that an aider and abettor may be punished the same as a principal for any offense. § 28-206. The statutory penalty for a Class III

felony is 1 to 25 years' imprisonment, a fine of up to $25,000, or both. Neb. Rev. Stat. § 28-105 (Reissue 1995).

It is well established in Nebraska that a sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion by the sentencing court. *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996); *State v. Bensing*, 249 Neb. 900, 547 N.W.2d 464 (1996); *State v. Flanagan*, 4 Neb. App. 853, 553 N.W.2d 167 (1996). In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her prior criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Orduna, supra*; *State v. Flanagan, supra*.

Dimmitt could potentially have been sentenced to consecutive terms of 1 to 25 years' imprisonment and a fine of up to $25,000 on each count. Considering Dimmitt's age, the severe nature of the offenses, the apparent motivation for the offenses, and the other factors noted above, Dimmitt's sentences, which were well within the statutory limits, are clearly not an abuse of discretion. This assigned error is without merit.

## VI. CONCLUSION

Finding no merit to Dimmitt's assignments of error, we affirm the judgment of the district court.

AFFIRMED.