Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/11/2018 09:09 AM CDT

State of Nebraska, appellant,
v. Tyler P., appellee.

___ N.W.2d ___

Filed May 11, 2018.    No. S-17-1250.

1. **Criminal Law: Courts: Juvenile Courts: Jurisdiction: Appeal and Error.** A motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion.
2. **Juvenile Courts: Jurisdiction: Waiver.** In deciding whether to grant the requested waiver and to transfer the proceedings to juvenile court, the court having jurisdiction over a pending criminal prosecution must carefully consider the juvenile's request in the light of the criteria or factors set forth in Neb. Rev. Stat. § 43-276 (Reissue 2016).
3. **Courts: Juvenile Courts: Evidence.** Under Neb. Rev. Stat. § 29-1816(3) (Supp. 2017), after considering the evidence and the criteria set forth in Neb. Rev. Stat. § 43-276 (Reissue 2016), the court shall transfer the case to juvenile court unless a sound basis exists for retaining the case in county court or district court.
4. **Courts: Juvenile Courts: Jurisdiction: Proof.** In a motion to transfer to juvenile court, the burden of proving a sound basis for retaining jurisdiction in county court or district court lies with the State.
5. **Courts: Juvenile Courts: Jurisdiction: Evidence.** There is no arithmetical computation or formula required in a county court's or district court's consideration of the statutory criteria or factors when deciding whether to grant a request to transfer to juvenile court.
6. ____: ____: ____: ____. When a county court or district court is deciding whether to grant a motion to transfer to juvenile court, there are no weighted factors, that is, no prescribed method by which more or less weight is assigned to each factor specified by statute.
7. ____: ____: ____: ____. When a county court or district court is deciding whether to grant a motion to transfer to juvenile court, its consideration is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.

8. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
9. **Appeal and Error.** Abuse of discretion is a highly deferential standard of review.
10. **Criminal Law: Appeal and Error.** Harmless error jurisprudence recognizes that not all trial errors, even those of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result.
11. **Appeal and Error.** Only prejudicial error, that is, error which cannot be said to be harmless beyond a reasonable doubt, which requires a reversal.
12. ____. When determining whether an alleged error is so prejudicial as to justify reversal, courts generally consider whether the error, in light of the totality of the record, influenced the outcome of the case.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Donald W. Kleine, Douglas County Attorney, Amy G. Jacobsen, and Jameson D. Cantwell for appellant.

James Martin Davis, of Davis Law Office, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, and FUNKE, JJ., and RIEDMANN, Judge, and MARTINEZ, District Judge.

FUNKE, J.

Tyler P. was 17 years old when he was charged in the Douglas County District Court with multiple felonies arising from a disturbance at his family's home. He filed a motion to transfer the case to juvenile court, which was sustained. The State appeals, assigning error to the grant of the motion to transfer. We affirm.

## BACKGROUND

### FACTS

The State filed an information in the district court for Douglas County charging Tyler with five felonies: two charges of attempted second degree murder, a Class II felony; two

charges of use of a deadly weapon (firearm) to commit a felony, a Class IC felony; and one charge of second degree assault, a Class IIA felony.

Tyler filed a motion to transfer the matter to juvenile court under Neb. Rev. Stat. §§ 29-1816 (Supp. 2017) and 43-261 (Reissue 2016). Tyler requested the district court waive jurisdiction of the matter to the separate juvenile court for further proceedings under chapter 43, article 2, of the Nebraska Revised Statutes.

A juvenile transfer hearing was held by the district court at which several witnesses testified and the State offered police reports concerning the incident of September 3, 2017. Gail P., Tyler's mother, testified about the events surrounding the incident; Dr. Terry Davis testified about Tyler's mental condition; and Heather Briggs, a juvenile probation officer, testified about the services available to Tyler in juvenile court.

Gail testified that Tyler was born in February 2000 and that she and Dennis P. are Tyler's parents. She also testified that Tyler resided with Dennis and Gail in their home in Waterloo, Nebraska; that he was active in high school sports, including being a standout football player; that he had minimal disciplinary problems at home or at school; and that he had never been in juvenile court.

She further testified that on the evening of September 2, 2017, Tyler had a group of friends at the house to watch a football game. In the early morning hours of September 3, Gail noticed activity outside the house so she and Dennis went to investigate. In doing so, they discovered that the interior of a barn on their property had significant damage and they found beer cans present. As a result, Dennis and Gail confronted Tyler about consuming alcohol and breaking the rules. In doing so, they noticed that Tyler was unsteady on his feet and lisping and, at one point, he sat down on the ground and stared blankly at them. They demanded that Tyler give them his car keys and cell phone in an effort to punish him for his behavior. At that time, Tyler became confrontational

and began to verbally and physically abuse Dennis and Gail and block their entrance into the house. Tyler then ran to a shed and returned with a baseball bat. Dennis called the 911 emergency dispatch service for assistance, which caused Tyler to chase Dennis and threaten him with the bat. Eventually Dennis and Gail were able to gain access to the house and lock the door. Tyler struck the door of the house with the bat several times and then gained access to the house through another door.

Gail was again confronted by Tyler in the family room of the home. At that time, she noticed that "his eyes were black" and he was laughing in a "creepy" manner. Tyler then ran toward the family's gun safe. Dennis lunged at Tyler and grabbed his legs in an effort to stop him from reaching the guns. Tyler broke free of Dennis and began stomping on his head and kicking him in the back. Tyler picked up an oversized ottoman in an effort to smash Dennis with it. Gail then began to kick Tyler in an effort to distract him from hurting Dennis further. Tyler then punched Gail in the head and struck her in the legs with the bat. After striking Gail, Tyler fled the house. While outside, Gail could hear Tyler laughing, yelling, and smashing things around the property. Gail testified that it was a very foggy night, so she could not see him at the time. Dennis and Gail exited the home and were standing on a patio when Tyler emerged from the fog. He appeared "eerily calm" and was saying that it was too late for him, that he was not good at football, and that he did not deserve to live. Tyler then went into the house and retrieved a shotgun.

Law enforcement arrived, and Tyler fled on foot. Deputies attempted to locate Tyler on the property, but due to the intense fog, they were not able to see him. Tyler then approached Gail and pointed the gun directly at her. Gail pleaded for Tyler not to shoot her and to put down the gun. Tyler then ran off again. Gail then heard gunfire and saw that Tyler had been shot.

Gail also testified that though she did not see Tyler shoot at the officers, she knew that he had been accused of doing so.

While in the hospital, Gail told Tyler that he had shot one of the officers.

Davis, a board-certified psychiatrist who is also certified in forensic psychiatry and addiction psychiatry, testified on behalf of Tyler. Davis testified that while playing a football game on September 1, 2017, Tyler had sustained four head-to-head significant impacts which most likely caused a concussion. Davis stated that Tyler had no memory of the events occurring on September 3 and that it was his diagnosis that Tyler suffered from neurocognitive disorder due to a traumatic brain injury. Davis based his diagnosis on the evaluation he completed of Tyler, evaluations completed by Tyler's pediatrician and a neuropsychologist after the shooting, and an interview of Gail in which she detailed Tyler's behavioral changes on the day of the incident. Davis noted that symptoms exhibited by Tyler, including such things as a personality change, the flatness of his affect and emotional display, his aggressive behavior, his change of smell and taste, and his hypersensitivity to sound and light are fairly classic signs of a traumatic brain injury. Davis testified that though Tyler had a blood alcohol content of .148, his behavior was not the result of alcoholic intoxication or an alcoholic blackout.

Davis opined that

> Tyler was in an amnestic episode and did not fully understand or appreciate what he was doing or that it was wrong, since he has no memory of it now. Was he able to intentionally carry out specific motor actions? Yes. He was able to get a baseball bat. He was able to chase after his mother. He was able to go to the gun cabinet and get a gun. He was able to load the gun, I assume, and fire it. But in terms of his intent to harm anyone or his appreciation of what his actions were at that time, those would have been substantially impaired.

Davis further opined that Tyler's prognosis was good. Davis stated that Tyler "should pretty much recover" within 3 months from the type of brain injury he sustained. Though there may

be some lingering effects, Davis believed those could be addressed through rehabilitation treatment through an outpatient brain injury clinic. He also testified that the events of September 3, 2017, appeared to be an isolated incident, that it was unlikely Tyler would commit a violent act in the future, and that incarcerating Tyler was not necessary for the safety of the public.

Briggs testified that she has been a juvenile probation officer for 13 years. Briggs stated that juvenile probation could offer services, including inhome services, family support, tracker, electronic monitoring, and assistance with arranging outpatient treatment for mental health or substance abuse. She further testified that due to Tyler's turning 18 in February 2018, some services would be limited, including out-of-home placement. In addition, Briggs testified that Tyler would be subject to the jurisdiction of the juvenile court only until he reached the age of 19.

### District Court's Findings

At the completion of the juvenile transfer hearing, the district court ruled from the bench and later entered a written order. The written order indicated that evidence was adduced and that after having considered the criteria set forth in Neb. Rev. Stat. § 43-276 (Reissue 2016), and for the reasons stated in open court, Tyler's motion to transfer the case to the separate juvenile court of Douglas County was sustained.

The court's full oral pronouncement from the bench is provided as follows:

It goes without saying, but the Court will say it anyway, that this was a very serious and life-threatening event to all those involved, and based upon the fact that [Tyler] does not have a memory as to the events, it is — I guess, in that sense, it arguably deprives the Court of being able to analyze what the motivation for the events would be or motivation for why he did what he did on that night.

At the same time, there is evidence, I guess, adduced from the expert, Dr. Davis, of this, in his diagnosis, of the neurocognitive disorder, which resulted from the traumatic brain injury, and that does at least coincide with the fact that a football game was played, that [Tyler] was involved in the day before, as well as another game, I guess, arguably, the week before. And when you're weighing all that with the factors in [§] 43-276 and having to balance those with the fact that he's never been through the Juvenile System, then you're trying to balance those with the safety of the public. And that is further balanced by, I guess, the fact that he has been out on bond for some time, and you could argue that there has at least been some time where he may have been able to access the public and whether this was just a one-time event.

And I guess from the Court's perspective, I would not see if he were to be transferred to the Juvenile Court, that that would be considered a free pass. I guess the Court would defer to the — if, in fact, he were in the Juvenile Court, to their expertise, and clearly there was something going on that needs to be evaluated and further evaluated, as it relates to [Tyler] and his mental/emotional state absolutely needs to be further evaluated and maybe even treated.

And the Court doesn't lose sight of the obvious that — of weighing the best interests of [Tyler], that the Court believes that he should be transferred to the Juvenile Court, and that is what the Court is going to do.

## ASSIGNMENTS OF ERROR

The State assigns, reordered and restated, that the district court abused its discretion in transferring Tyler to juvenile court, because (1) a sound basis existed for retaining the matter in district court, (2) the court did not sufficiently make the required findings pursuant to § 43-276, and (3) the court decided the motion to transfer without first reading and

considering the police reports related to the investigation of the crimes charged.

## STANDARD OF REVIEW

[1] A motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion.[1]

## ANALYSIS

### LEGAL FRAMEWORK

Under § 29-1816(3)(a) for motions to transfer a case from the county court or district court to juvenile court:

> The county court or district court shall schedule a hearing on such motion within fifteen days. . . . The criteria set forth in section 43-276 shall be considered at such hearing. After considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court[.]

The considerations in determining whether to transfer a case are set out in § 43-276(1):

> The county attorney or city attorney, in making the determination whether to file a criminal charge, file a juvenile court petition, offer juvenile pretrial diversion or mediation, or transfer a case to or from juvenile court, and the juvenile court, county court, or district court in making the determination whether to transfer a case, shall consider: (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court;

---

[1] See *State v. Hunt, ante* p. 573, 909 N.W.2d 363 (2018); *State v. Dimmitt*, 5 Neb. App. 451, 560 N.W.2d 498 (1997).

(f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

### DISTRICT COURT DID NOT ABUSE DISCRETION TRANSFERRING TO JUVENILE COURT

The State contends that a sound basis existed for retaining the matter in district court. More specifically, the State argues that the extreme level of violence, the obvious public safety concerns, the motivation of the offense, and Tyler's age at the time of the offense all support retaining the matter in adult court.

[2-4] This court has stated that in deciding whether to grant the requested waiver and to transfer the proceedings to juvenile court, the court having jurisdiction over a pending criminal prosecution must carefully consider the juvenile's request in the light of the criteria or factors set forth in § 43-276.[2] After the court considers the evidence in light of the § 43-276 factors, "'the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or

---

[2] *State v. Thieszen*, 232 Neb. 952, 442 N.W.2d 887 (1989).

district court.'"[3] Thus, transfer in the absence of a sound basis for retention is the general rule.[4] The burden of proving a sound basis for retention lies with the State.[5]

[5-7] There is no arithmetical computation or formula required in a court's consideration of the statutory criteria or factors.[6] Also, there are no weighted factors, that is, no prescribed method by which more or less weight is assigned to each factor specified in the statute.[7] It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.[8]

In the instant matter, based on the evidence considered by the district court, the district court found that there was not a sound basis for the adult court to retain jurisdiction of the defendant's case. These findings may be summarized as follows:

• The case involved a "very serious and life-threatening event to all those involved."
• The court could not determine Tyler's motives due to his lack of memory as to the events.
• Davis' diagnosis provided evidence that Tyler had a neurocognitive disorder, which resulted from a previous traumatic brain injury.
• Tyler had never been involved with the juvenile system.
• Tyler had been out on bond for some time, and there was no evidence of additional violence.
• The incident seemed to be a one-time event.
• Were Tyler in juvenile court, he would be subject to further evaluations for his mental/emotional state.
• Treatment for Tyler's mental state may be necessary.

---

[3] *Hunt, supra* note 1, *ante* at 582, 909 N.W.2d at 371.

[4] *State v. Doyle*, 237 Neb. 60, 464 N.W.2d 779 (1991).

[5] *Hunt, supra* note 1.

[6] See *State v. Alexander*, 215 Neb. 478, 339 N.W.2d 297 (1983).

[7] *Id.*

[8] See *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015).

Although the record shows that this matter involved very serious crimes and that due to Tyler's age, he will be under the jurisdiction of the juvenile court for less than 1 year, the record also supports the district court's findings. The evidence indicates that Tyler continues to reside at home with Dennis and Gail, that he had not been violent in the past, that he had no prior criminal record, that his crimes were attributable to a previously suffered brain trauma, that treatment and the passage of time would most likely resolve his brain trauma, and that he had not been violent since the event.

[8,9] Applying the balancing test in the light of the several criteria or factors found in § 43-276(1), we find that the district court did not abuse its discretion in transferring Tyler's case to the separate juvenile court. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[9] Abuse of discretion is a highly deferential standard of review.[10]

Our review indicates the district court applied the general rule set forth by the Legislature under § 29-1816(3)(a) that the case "shall be transferred to juvenile court unless a sound basis exists for retaining the case" and that, when weighed against the evidence Tyler presented at the hearing, the State failed to meet its burden to show a sound basis for retention. The State's first assignment of error is therefore without merit.

### DISTRICT COURT MADE
### SUFFICIENT FINDINGS

The State contends that the court failed to set forth sufficient findings to warrant a transfer to juvenile court. Under § 29-1816(3)(b), the district court is required to set forth findings for the reason for its decision.

---

[9] *Rodriguez v. Surgical Assocs. P.C.*, 298 Neb. 573, 905 N.W.2d 247 (2018).

[10] See *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

In *State v. Phinney*,[11] we held that when a juvenile requests that the case be transferred to juvenile court, it is mandatory for a trial court to set forth on the record its findings supporting its determination that there is a sound basis for refusing to transfer the juvenile's case. We noted that in *Kent v. United States*,[12] the U.S. Supreme Court, in reviewing a District of Columbia statute which permitted juvenile courts to waive jurisdiction over minors to adult criminal courts, stated that the juvenile court must accompany its waiver order with the statement of reasons or considerations therefor and that such a statement "must set forth the basis for the order with sufficient specificity to permit meaningful review." We also noted in *State v. Torres*[13] that a trial court must make a statement of its findings which provides sufficient specificity to permit meaningful review by this court.

In *State v. Stewart*,[14] we addressed the issue of the findings that must accompany a trial court's decision on a motion to transfer to juvenile court. In *Stewart*, the trial court made a separate statement of its findings for retaining jurisdiction of the case, specifically mentioning five of the factors set forth in Neb. Rev. Stat. § 43-202.01 (Reissue 1978) (the predecessor of § 43-276). We found that while it would have been preferable for the trial court to refer to all the considerations set forth in § 43-202.01, in its order, the statute in question did not require the court to do so.

However, in *State v. Doyle*,[15] we remanded a motion to transfer to juvenile court back to the trial court to make specific findings as provided by statute. Neither the oral findings

---

[11] *State v. Phinney*, 235 Neb. 486, 455 N.W.2d 795 (1990).

[12] *Kent v. United States*, 383 U.S. 541, 561, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966).

[13] See *State v. Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988).

[14] *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977), *overruled on other grounds, State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

[15] *Doyle, supra* note 4.

of the court nor the court's written order detailed the findings made in support of the order of denying the transfer.

In the instant matter, the district court's order merely sets forth that after considering all the factors of § 43-276, and for the reasons stated in open court, Tyler's motion to transfer was sustained. Without more, the order would not permit meaningful review by this court. However, in its oral findings, the court stated that it weighed the factors in § 43-276(1) and balanced those with the safety of the public. In doing so, the court found that the case should be transferred to juvenile court. The court specifically referenced relevant statutory factors, including the motivation behind the offense, the juvenile's previous criminal history, the juvenile's ability to appreciate his conduct, the best interests of the juvenile, and the safety of the public. And, as we have previously stated, though it would have been preferable for the district court to refer to all the statutory considerations, the statute does not require it to do so. As a result, this assignment of error is without merit.

## Harmless Error Not to Consider All Evidence

The State contends that the district court failed to consider all of the evidence submitted by the parties prior to pronouncing its ruling. More specifically, the State argues that the court did not review the investigative reports concerning the events on September 3, 2017.

Section 29-1816(3)(a) requires that only after the trial court "*consider*[*s*] *all the evidence* and reasons presented by both parties" may a case be transferred to juvenile court. (Emphasis supplied.)

The record is clear that approximately 141 pages of police reports were offered into evidence by the State at the close of the juvenile transfer hearing. After receiving the police reports, the court immediately heard closing arguments from counsel. Upon completion of the closing arguments, the court

proceeded to render its findings and decision. Though the State asked the court to delay its ruling until it had considered all of the evidence, the court chose not to do so. As a result, the district court erred by failing to review and consider the police reports offered by the State.

[10-12] However, the determination that the district court erred does not end our consideration of this assignment of error. Our harmless error jurisprudence recognizes that not all trial errors, even those of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result.[16] It is only prejudicial error, that is, error which cannot be said to be harmless beyond a reasonable doubt, which requires a reversal.[17] When determining whether an alleged error is so prejudicial as to justify reversal, courts generally consider whether the error, in light of the totality of the record, influenced the outcome of the case.[18]

The evidence the district court failed to review involved the law enforcement investigation of the events on September 3, 2017. Within those reports is evidence that Tyler had consumed alcohol that night, that he verbally and physically assaulted Dennis and Gail, that he destroyed property with a baseball bat, that he physically assaulted Dennis and Gail, that he fired a shotgun at two law enforcement officers, that one of the officers received a gunshot wound to his arm, that the officers returned fire at Tyler, and that one of the officers shot Tyler in the abdomen. Though the police reports provided detailed information, the facts set forth in the reports are similar in nature to the allegations of the information filed by the State and the facts recounted by Gail and Davis. As noted, the district court began its oral findings by stating that "this was a very serious and life-threatening event to all those involved."

---

[16] *State v. Kidder, ante* p. 232, 908 N.W.2d 1 (2018).

[17] See *id.*

[18] *Id.*

As a result, the error of not reviewing the police reports, in light of the totality of the record, did not influence the outcome of the case.

## CONCLUSION

For the reasons stated in this opinion, we affirm the decision of the district court to transfer this matter to the juvenile court.

Affirmed.