IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WOL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DUT WOL, APPELLANT.

Filed March 12, 2019.    No. A-18-1064.

Appeal from the District Court for Douglas County: PATRICIA A. LAMBERTY, Judge, Retired. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Lauren J. Micek for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

### INTRODUCTION

Dut Wol, age 17 at the time of his charged offenses, appeals from the Douglas County District Court's order denying his motion to transfer his pending criminal proceeding to the juvenile court. Finding no abuse of discretion, we affirm.

### BACKGROUND

#### JULY 2, 2018, ARMED ROBBERY

Wol, born in December 2000, is alleged to have been involved in an armed robbery on July 2, 2018. At 3:49 a.m. that day, law enforcement responded to a reported robbery, and made contact with three white male victims, ages 15, 16, and 17, and the father of the 15-year-old victim. According to police reports, the victims were walking home from a gas station, and after crossing

- 1 -

a pedestrian overpass at North 56th Street and NW Radial Highway in Omaha, Nebraska, they were approached by "juvenile black males." The 17-year-old victim said a black male in a "gray hoodie" pulled out a black semi-automatic handgun, started tapping it on the 15-year-old victim's head, and then pointed the gun at all of them. The 15-year-old victim said he "'heard a click from a gun'" and heard someone say "'run that shit, nigga.'" They were told to empty their pockets. The 15-year-old said the person with the gun was wearing a yellow jacket, and that he "put the gun to his [victim's] forehead"; he also identified there being a second "black male teen in a gray hoodie," who was present but did not say or do anything. The 16-year-old victim heard someone say "'run that shit'" before a handgun was held to the 15-year-old victim's head and then all three victims were being "flagg[ed]" with the handgun. The person holding the gun demanded property from all three victims and told them, "'do it or I'll cap you.'" The 16-year-old said a second person was there but did not say or do anything; one of them said something like "'you guys have a good day'" when they left. According to the 17-year-old, the person who took their property said, "'Have a nice fucking day, you didn't see anything.'"

The property taken from the victims included a silver cell phone in a red case with an image of a "valve cover gasket" on it (and multiple stickers on the back), "Skull Candy" headphones, a black cell phone with a black case, white "apple earbuds," a white phone charger, and another black cell phone in a pink case "with a 'bong' on the back."

After receiving information from the father of one of the victims, police went to the gas station in search of suspects and observed "three black male juveniles sitting on the wall in front of the front doors." When the police activated the emergency lights on their cruisers and announced they were the police, one "black male, wearing a gray jacket and khaki pants, immediately grabbed his waistband and ran westbound from the gas station." While in pursuit, the suspect was observed "holding his waistband, as if he were trying to prevent something from falling out of his pants." Visual contact was lost for about 10 seconds while the suspect ran along the west side of a church. The suspect subsequently "gave up and proned out" in a parking lot. The suspect was identified as Wol. A magazine for a compact sized "Sig Sauer handgun in 9mm" was located approximately 15 feet away from Wol. Officers searched along the path of the foot pursuit, including a search of the roof of the church where visual contact had been lost. A black "semi-automatic Sig Sauer 9mm handgun" was located there. The magazine located near Wol matched the handgun located on the roof. Wol was also in possession of a white "phone charger," and two cell phones, one in a red case with the image of a "valve cover gasket" on it, and the other in a pink case.

DNA testing on a swab of blood near the bottom grip of the confiscated firearm connected it to Wol; the probability that the DNA profile could be someone other than Wol was 1 in 8.9 nonillion, "which is 30 zeros."

A criminal complaint was filed in the county court for Douglas County in July 2018, alleging three counts of robbery, each a Class II felony, and three counts of use of a deadly weapon (firearm) to commit a felony, each a Class IC felony. The case was bound over to the district court in August, and an information was filed in the district court charging Wol with three counts of robbery in violation of Neb. Rev. Stat. § 28-324(1) (Reissue 2016), each a Class II felony (punishable by 1 to 50 years' incarceration; see Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018)), and three counts of using a firearm to commit a felony in violation of Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016), each a Class IC felony (punishable by a mandatory minimum 5 years' and up to a

maximum of 50 years' imprisonment; see § 28-105). On October 5, Wol filed a motion to transfer the proceedings to juvenile court pursuant to Neb. Rev. Stat. § 29-1816 (Supp. 2017). A hearing on Wol's motion to transfer took place on October 24.

HEARING ON MOTION TO TRANSFER

Brent Janzen, a juvenile probation officer with Douglas County, testified about the levels of placement available to juveniles who are under the juvenile court's jurisdiction. This includes "short-term shelter placement and crisis stabilization placement and group home, and then there's also the [Youth Rehabilitation Treatment Center (YRTC)] in Kearney and Geneva." Janzen began supervising Wol in April 2018 when Wol had been placed on probation for obstructing a peace officer. Wol was "placed at home in the community" at that time. While on juvenile probation, Wol "had GPS and electronic monitoring, tracker services, therapy, outpatient therapy," and was to attend school. Janzen indicated that Wol's prior probation was in the process of being revoked, and in the event out-of-home placement was ordered by the court, steps would be taken to apply to in-state group homes; according to Janzen, the three "prominent group homes" in Omaha, Nebraska, are "Boys Town, Omaha Home for Boys, and then Youth Care and Beyond." There is no guarantee that a youth will be accepted at a particular group home. If a juvenile is denied admittance to the in-state group homes, the next step would be to apply to out-of-state group homes. Janzen testified that none of the group homes are locked facilities, so there is nothing preventing a juvenile from leaving that facility. Janzen testified that the YRTC is "the highest level of supervision that we have for juveniles in the state of Nebraska." Janzen did not know how long a youth could be placed at YRTC, but knew they could not be held after they turned 19 years of age.

On cross-examination, Janzen acknowledged that Wol had not been provided certain services, such as "multi-systemic therapy" and "Boys Town ecological services." These are services provided in the home. Janzen also acknowledged that there were therapeutic "locked group homes" where a person "diagnosed with a certain mental health condition or determined to be a risk" could be placed. He was familiar with "Boys Town PRTF," "NOVA PRTF," and "Hastings," and agreed these were "locked treatment facilities." On redirect, Janzen clarified that to receive the "PRTF level of care," a medical professional would have to provide a diagnosis "that shows the need for that higher level of care." Janzen was not aware of any mental health diagnosis for Wol, but was aware that a chemical dependency evaluation had been done in May "of this past year."

Wol's juvenile record shows that in June 2018, he was put on 6 months' probation for "OBST OFFICER," for an incident reported in January. Also in June, he was put on 6 months' probation for "WEPN CONCEAL," for an incident reported in April.

According to the affidavit of Melissa Driscoll, she has worked for 17 years as a juvenile court coordinator in the Douglas County Public Defender's Office. She was aware of Wol's juvenile court case history and that two cases were scheduled to be heard in October 2018 on motions to revoke probation. She averred that if the pending case was transferred to the juvenile court, "an evaluation, including but not limited to a chemical dependency, psychological and psychiatric evaluations could be ordered to consider new information and make recommendations regarding appropriate services and level of care for placement." In her opinion, the juvenile court

- 3 -

had services available to it for Wol, such as group home placement (in or out of state). Driscoll listed specific entities, which we note varied in the length of placement from 6 months up to 18 months, or in the case of the YRTC, from 3 months up to age 19. She described various services available through the juvenile court, but noted its authority to order plans and placement only until the youth turns 19.

At the conclusion of the hearing, the district court expressed concern regarding Wol's age, that this violation occurred while Wol was already in juvenile court, and that the charges involved a gun and robbery. The court was concerned there was not enough time to address the seriousness of these crimes since Wol would be 19 years old "in a year and a month." The court orally pronounced that it was denying the motion to transfer for "some of the reasons set forth in [Neb. Rev. Stat. §] 43-276 [(Reissue 2016)] and the reasons" just stated, "because of the seriousness of . . . the allegations and because of his age and that he was already in juvenile court when these alleged offenses took place." On November 1, 2018, the district court entered an order denying the transfer, stating that pursuant to § 29-1816 and "using the balancing test by which public protection and societal security are weighed against the practical and non-problematical rehabilitation of [Wol], the Court finds that [Wol] should not be transferred to the Separate Juvenile [C]ourt due to [Wol's] age and the seriousness of the offenses charged." Wol appealed from this order.

## ASSIGNMENTS OF ERROR

Wol assigns that the district court erred by finding the State met its burden of establishing a sound basis for retention of the case in the district court, and thus, erred by denying his motion to transfer his case to juvenile court.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

### JURISDICTION

When a juvenile seeks to transfer a criminal case from adult court to juvenile court, § 29-1816(3)(c) provides that "[a]n order granting or denying transfer of the case from county or district court to juvenile court shall be considered a final order for the purposes of appeal." The statute further states that, upon entry of such an order, "any party may appeal to the Court of Appeals within ten days." *Id*. On November 1, 2018, the district court entered its order denying Wol's request to transfer his case to juvenile court, and Wol filed his notice of appeal on November 9; his appeal is timely.

### MOTION TO TRANSFER TO JUVENILE COURT

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a

Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all of the allegations against Wol put him within this category of juvenile offenders.

When Wol moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276(1):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at a juvenile transfer hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a) and (b).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

### DISTRICT COURT'S REASONS FOR DENYING TRANSFER

The district court stated on the record at the juvenile transfer hearing that it was concerned about Wol's age, the fact that this violation occurred when Wol was already under the juvenile court's jurisdiction, and that the charges involved a gun and robbery. Since Wol would be turning 19 years of age "in a year and a month," and based on the seriousness of the crimes, the court did not "think [that was] enough time." The court then stated:

- 5 -

What I would do is encourage him to be transferred to Young Adult Court, which is in Douglas County District Court. And the advantage of Young Adult Court is, if they will accept him in District Court, he follows through - number one, he can be there beyond the age of 19. Number two is that they can provide all kinds of services and assistance from probation. And number three is that if he successfully completes it all, the charges can be reduced to misdemeanors.

The district court thereafter orally pronounced that it was denying the motion to transfer to juvenile court "for some of the reasons set forth in 43-276 and the reasons I just alleged, because of the seriousness of . . . the allegations and because of his age and that he was already in juvenile court when these alleged offenses took place." The court again suggested referring Wol to "Young Adult Court," which takes "juveniles between the ages of 15 and 21 and they keep them for a while, and they can provide services and they can provide huge benefits to [Wol] if he follows through with what they request him to do." The court indicated its willingness to assist in "mak[ing] that happen." In the order entered on November 1, 2018, the court stated, "Pursuant to [§ 29-1816] and using the balancing test by which public protection and societal security are weighed against the practical and non-problematical rehabilitation of [Wol], the Court finds that [Wol] should not be transferred to the [juvenile court] due to [Wol's] age and the seriousness of the offenses charged."

NO ABUSE OF DISCRETION IN DECISION TO RETAIN PROCEEDINGS

Wol argues that the State did not meet its burden to show a sound basis exists to retain his case in the district court, and that the district court improperly focused on his age and the fact that the alleged crime occurred while he was already on juvenile probation. He points out that Janzen testified that Wol had only been under the jurisdiction of the juvenile court since April 2018, and during that time, the only services Wol received were "GPS/Electronic monitoring, tracker services, and outpatient therapy." Brief for appellant at 12. He notes Janzen's belief that as a result of the motion to revoke pending, Wol was likely to be ordered to a group-home level of care and would be provided a more structured disciplinary setting. Wol also sets forth the various services available for Wol, which we note were explained by Janzen in his testimony and Driscoll in her affidavit. Wol claims that "[t]he court's failure to account for the distinction in services previously availed to [Wol], versus the list of services he would be able to participate in, was an oversight by the court." *Id*. Wol also claims the court failed to acknowledge factors, such as Wol's ability to be rehabilitated. Wol acknowledges "the severity of the charges" and that he needs rehabilitation, but asserts that "it is an unjust assumption that his criminal proclivities as a juvenile render him incapable of reform before adulthood when he has been denied access to the most intensive and rehabilitative levels of treatment the juvenile system has to offer." *Id*. at 13.

As noted earlier, in order to retain the proceedings, a trial court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. See *State v. Stevens, supra*. Further, a trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

Although the district court did not specifically discuss every factor set forth in § 43-276(1), the court did state it was making its decision based on some of the factors in § 43-276 and specifically identified concerns regarding Wol's age, the seriousness of the allegations, and the fact that Wol was already in the juvenile court system. The fact that the district court did not address every factor set forth in § 43-276(1) does not constitute an abuse of discretion. See *State v. Tyler P.*, 299 Neb. 959, 971, 911 N.W.2d 260, 269 (2018) ("though it would have been preferable for the district court to refer to all the statutory considerations [set forth in § 43-276(1)], the statute does not require it to do so"). The reasons for retaining the case in the district court were sufficiently articulated in the court's oral pronouncement and subsequent written order. Wol was turning 18 in December 2018, leaving little time for rehabilitation before the juvenile court would no longer have jurisdiction over him. Given the serious nature of the offenses charged, specifically, that a firearm was pointed at one victim's head as well as pointed at the other victims in the course of a robbery, the necessity for retaining jurisdiction over Wol beyond the age of 19 is a significant consideration when balancing public protection and societal security against the rehabilitation of Wol.

Wol's arguments that he has not yet been provided opportunities for rehabilitation at a higher, more intense level, such as group home placement, are reasonable arguments, but there is no requirement that each type or level of juvenile rehabilitation be attempted in juvenile court before retaining jurisdiction over a case in the district court. As is often the problem in cases involving juveniles who are within a few years of turning 19, courts are rightfully concerned that there may be insufficient time to ensure that rehabilitation will be successful. Because Nebraska law does not authorize the juvenile court to retain jurisdiction over a defendant once he or she turns 19, the age of the juvenile defendant is a significant factor when balancing public safety against the juvenile defendant's obvious best interests in being provided opportunities for rehabilitation in the juvenile court. In *State v. Leroux*, 26 Neb. App. 76, 916 N.W.2d 903 (2018), we set forth a number of cases in which juvenile transfer requests were denied, often because of the concern that there was insufficient time for rehabilitation within the jurisdictional age limit of the juvenile court. We stated:

> The theme evident in the cases discussed above is this: When a juvenile commits a violent crime, the trial court is not likely to grant a request to transfer to the juvenile court because (1) the juvenile court will lose jurisdiction when the defendant turns 19 years of age which may not allow sufficient time for the complete rehabilitation of the juvenile, and therefore retention is necessary to ensure public safety, and (2) there is no secure youth detention facility available which can safely provide the appropriate services and treatment for a juvenile who has committed a more serious offense. This means that a trial court must balance a juvenile's amenability to complete rehabilitation by age 19 against the public's safety in the event that rehabilitation fails or requires more time than anticipated. The trial court's decision carries the consequence that if the decision is wrongly made, we have either missed an opportunity to rehabilitate a juvenile outside the negative influences of adult incarceration or failed to adequately incarcerate a potentially dangerous juvenile who will go on to commit further violent crimes.

*State v. Leroux*, 26 Neb. App. at 118, 916 N.W.2d at 929.

These are difficult decisions for the district court to make, and this court may only consider whether that decision constitutes an abuse of discretion. We cannot say that the district court's decision in this case goes clearly against justice or conscience, reason, or the record presented, and we therefore find no abuse of discretion by the district court in denying the motion to transfer.

## CONCLUSION

We affirm the district court's order denying Wol's request to transfer the case to the juvenile court.

AFFIRMED.