IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. KODI B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KODI B., APPELLANT.

Filed July 3, 2023.    No. A-23-204.

Appeal from the District Court for Valley County: KARIN L. NOAKES, Judge. Affirmed.

Christopher P. Wickham, of Sennett, Duncan, Jenkins & Wickham, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Matthew Lewis for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

The Valley County District Court denied Kodi B.'s motion to transfer his case to the juvenile court. Because the district court's basis for retaining jurisdiction is supported by appropriate evidence, the court did not abuse its discretion when it refused to transfer the case to the juvenile court.

## II. BACKGROUND

According to an affidavit for an arrest warrant, Kodi, age 17 at the time, sexually penetrated his 10-year-old sister, M.B., a couple of times during the summer of 2022. M.B. lived with her father in Kearney County but spent most of her summer break with her mother (and her mother's husband) in Valley County, where Kodi resided full time. On one occasion, M.B. was asleep on a couch and woke up with Kodi on top of her, with her pants and Kodi's pants pulled down and Kodi

- 1 -

"'was inside of her rocking back and forth.'" M.B. reported that she had "sperm leaking out of her" and the couch was wet where she had been sleeping. M.B. pushed Kodi off of her and when she informed her mother of what had happened, she was accused of lying. The same thing happened the following night, although this time Kodi told M.B. that if she told their mother, "he would kill her." M.B. nevertheless told their mother about the second incident.

On January 20, 2023, an information was filed in the district court charging Kodi with first degree sexual assault pursuant to Neb. Rev. Stat. § 28-319 (Reissue 2016), a Class II felony, and incest pursuant to Neb. Rev. Stat. § 28-703 (Reissue 2016), a Class IIA felony. On February 6, Kodi filed a motion to transfer the proceeding to juvenile court.

A hearing on Kodi's motion took place on February 21, 2023. Exhibits 1 through 6 were received without objection. The State called Chief Deputy David Scheideler from the Valley County Sheriff's Office, who confirmed that at the time the alleged sexual acts occurred, Kodi was 17 years old, and his sister was 10 years old. Kodi had turned 18 years old by the time of the hearing.

Kodi's and M.B.'s mother testified that she had seven children, but only Kodi resided with her. She stated that Kodi had never been in trouble that led to juvenile or criminal proceedings in the past and confirmed that this was the "first time he's ever been in trouble." She also confirmed that Kodi had been complying with his bond conditions.

Exhibit 1 is a copy of the information. Exhibit 2 is a copy of the affidavit for arrest warrant. Exhibit 3 is a medical report from the Family Advocacy Network in Kearney, Nebraska. It provides a summary of a doctor's medical examination of M.B. which took place on September 2, 2022. The report states that the

> exam is concerning for vaginal penetration given the redundant tissue and the wider spacing of her hymen. It is reassuring that there were no acute tears or bleeds, but . . . the last contact may have been over a month ago which would have allowed time for healing of any acute tears.

The report concludes that M.B.'s exam is "consistent with some past sexual activity which is concerning given her age," and that "[t]his is consistent with the history that [M.B.] has provided."

Exhibit 4 is an article about the "relationship of age to sexual recidivism," and exhibit 5 is an article about the "effectiveness of a cognitive-behavioral treatment in reducing recidivism by adolescents who have sexually offended."

Exhibit 6 contains an email exchange between defense counsel and a licensed psychologist who outlined services that would be available for "juveniles who have sexually offended." It indicates that in a therapeutic group home, the average length of stay is 9 to 12 months. For an intensive outpatient program, the average length of stay is 4 to 6 months, and for outpatient therapy, the average length of stay varies from 6 to 12 months. It also points out that there is "a higher level of care in the State, Psychiatric Residential Treatment Facility operated by Whitehall," but the psychologist was "not able to comment on their length of stay." The psychologist further explained that "much depends on specific details related to the nature of the offense, other mental health and behavioral issues," but "[i]n general, . . . one year would be a realistic time frame for this purpose."

The district court entered an order on March 9, 2023. The court gave "[s]ignificant weight" to "the fact that the crimes involved violence against a 10-year-old child" and that "the type of treatment necessary will extend beyond [Kodi's] 19th birthday," which the court pointed out would occur within 1 year. Considering that "additional time [would] pass before an adjudication and disposition could occur," the court noted that this would limit the "opportunity for successful rehabilitation within the juvenile system." It found that the motivation for the offense appeared to be "personal gratification," and that Kodi had "little awareness of the impact his actions [had] on the victim and [didn't] appear to appreciate the nature and seriousness of his conduct." The court further found,

> To minimize the likelihood of reoffending, [Kodi] will need services for a longer time than would be allowed in the juvenile system. Treatment options for sex offenders often take more than one year. A transfer to the juvenile court will not allow the time necessary to rehabilitate [Kodi], which is in his best interest.
>
> In addition, the security of the public may require that [Kodi] continues in secure detention or under supervision for a period extending beyond his minority.

In balancing the public protection and societal security against the practical and non-problematical rehabilitation of the juvenile, the court found that a sound basis existed for retaining the case and therefore, it denied the motion to transfer the case to the juvenile court.

Kodi timely filed an appeal on March 15, 2023.

## III. ASSIGNMENT OF ERROR

Kodi claims the district court abused its discretion in denying his motion to transfer to the juvenile court.

## IV. STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. MOTION TO TRANSFER TO JUVENILE COURT

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, both charges filed against Kodi put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2022).

## 2. LEGAL PRINCIPLES

When Kodi moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2022):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a). "[F]actors that are considered 'neutral' or 'not applicable' are equivalent to factors that favor transfer because § 43-276 starts with the presumption that the case should be transferred." *State v. Aldana Cardenas*, 314 Neb. 544, 561, ___ N.W.2d ___, ___ (2023). The classification of certain factors as "neutral," "not applicable," or "weighing in favor of transfer" are better described as factors that do not support a sound basis for retention. See *id*.

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Hunt, supra*.

### 3. FACTORS WEIGHED BY THE DISTRICT COURT

The district court's order did not identify the specific statutory factors relied upon in reaching its decision to retain jurisdiction, but we read the court's order to incorporate the following factors: § 43-276(b) (violence "against a 10-year-old child"); § 43-276(c) (Kodi's motivation "appeared to be 'personal gratification'"); § 43-276(f) (insufficient time to rehabilitate Kodi in juvenile court, and rehabilitation is in his best interest); § 43-276(g) (consideration of public safety); § 43-276(h) (Kodi had "little awareness of the impact his actions" on M.B. and did not appear "to appreciate the nature and seriousness of his conduct"); and § 43-276(i) (Kodi's best interests and the security of the public required that he continue in secure detention or under supervision for a period extending beyond his minority). The only finding by the court that can be construed as not supporting a sound basis for retention is § 43-276(h), since the court concluded Kodi had "little awareness" of the impact of his actions and did not appreciate the nature and seriousness of his conduct; the remaining factors support retention by the district court.

### 4. KODI'S ARGUMENT IN SUPPORT OF TRANSFER

Kodi contends that he is a "young man with no criminal or juvenile history whatsoever, and that sufficient time existed for him to complete a treatment program with a demonstrated history of success before the conclusion of a juvenile court's jurisdiction." Brief for appellant at 9. He contends the "overwhelming majority" of factors favored transfer to the juvenile court. *Id*. He points to Neb. Rev. Stat. § 43-246(3) (Cum. Supp. 2022), which states that the juvenile code "shall be construed to remove juveniles . . . from the criminal justice system whenever possible and to reduce the possibility of their committing future law violations through the social and rehabilitative services to such juveniles and their families."

#### (a) Kodi's Agreement With District Court

##### *(i) Violence, § 43-276(1)(b)*

Kodi "concedes that the evidence presented at the transfer hearing suggested that the offenses included violence," and therefore, this supports retaining jurisdiction in the district court. Brief for appellant at 13.

##### *(ii) Ability to Appreciate Nature of Conduct, § 43-276(1)(h)*

Contrary to our observation earlier, Kodi interprets the district court's finding under § 43-276(h), regarding his inability to appreciate the nature and seriousness of his conduct, as a factor that "marginally weighs in favor" of the court retaining jurisdiction. Brief for appellant at 18. As noted above, we read the court's finding to mean that Kodi was not fully aware of the harmful impact of his conduct; as such, with maturity and education there is a better chance of rehabilitating such behaviors. On the other hand, someone who is fully aware of the harmful impact of his actions and proceeds to engage in them anyway is a much more dangerous individual whose rehabilitation may be better handled by the adult system than the juvenile court, particularly given the limited time before the juvenile court would lose jurisdiction over the case. Therefore, as previously stated, we view this finding as not supporting a sound basis for retention.

(b) Kodi's Disagreement With District Court

Kodi contends that most of the other factors under § 43-276(1) favor transferring the case to the juvenile court, and he takes issue with the district court's analysis of the remaining factors or its failure to address them at all.

*(i) Amenability to Treatment, § 43-276(1)(a)*

Kodi claims the district court ignored discussing the type of treatment he would be amenable to and pointed to one of the articles received into evidence which indicated that "cognitive behavioral therapy has been shown through peer-reviewed research to be quite effective for juvenile offenders." Brief for appellant at 12. He contends that the State, despite having the burden of proof, presented "no evidence suggesting that [Kodi] was uniquely ill-suited to such a therapy program." *Id*. He further points to the psychologist's email reflecting that such programs are "typically completed within four-to-twelve months and could be expedited if necessary to complete within the jurisdictional confines of the juvenile court." *Id*. He argues, "Given the lack of evidence suggesting a pattern of problematic sexual behavior, the ability of therapeutic providers to expedite services if necessary to accommodate a limited jurisdictional window, and the demonstrated success of cognitive behavioral therapy programs for juvenile sexual offenders generally, there was every reason to believe that [Kodi] would be able to complete an effective juvenile sexual offender program prior to his nineteenth birthday." *Id*. at 12-13.

The State responds, and we agree, that regardless of what treatment Kodi would be most amenable to, "the evidence suggests any supervision and treatment period would extend beyond the juvenile court's jurisdiction." Brief for appellee at 12. This factor favors retention.

*(ii) Motivation for Commission of Offense, § 43-276(1)(c)*

Kodi acknowledges that the district court's "inference that the motivation was [Kodi's] own sexual gratification was certainly reasonable" and he does "not take issue with that factual determination." Brief for appellant at 13. He argues that where the court "went astray" was its "unexplained conclusion" that this motivation weighed in favor of retaining the case. *Id*. He claims that there was no evidence showing a pattern of sexually inappropriate behavior by Kodi and that the allegations in the case did not involve "any degree of planning or forethought" and "it is unclear" why such an issue could not be addressed "therapeutically in a treatment program such as those provided on a regular basis to juvenile sexual offenders throughout the State of Nebraska." *Id*. at 14.

In response, the State contends there is no reason apparent in the record for Kodi's motivation other than sexual gratification, and that without any intervening or mitigating factors, it was appropriate for the district court to consider this motivation in its decision.

While Kodi acknowledges the district court's findings regarding motivation, he suggests that because there is no history of such behavior, he should have an opportunity to participate in a treatment program for juvenile sexual offenders. However, this goes to Kodi's amenability to treatment, which we have already addressed. This factor favors retention.

*(iii) Age and Circumstances, § 43-276(1)(d)*

Kodi acknowledges the limited timeframe available for treatment in the juvenile court and that it "would require effort and commitment from [Kodi] to be successful." Brief for appellant at 14. But he claims there was sufficient time for him to complete a sexual offender treatment program "well prior to reaching the age of majority." *Id*. He points to the psychologist's email setting forth three levels of programming, which are all structured to be completed in less than 1 year and can be expedited for older juveniles. Kodi argues that the district court's view of the limited time "represented an unfortunate level of cynicism unwarranted by the facts available" to the court. *Id*. at 15. He points out that the State presented no evidence of Kodi committing any prior criminal offense, and there was no evidence he had been previously adjudicated in juvenile court.

> Instead of taking this evidence at face value, and inferring that [Kodi's] lack of criminal history was reflective of good character and a supportive family that is likely to help ensure success on a potential term of juvenile probation, the District Court chose to assume the worst by speculating that [Kodi] would not be able to complete a treatment program despite evidence showing ample time remained.

*Id*.

The State responds that Kodi's age and "rehabilitative path forward to address these serious behavioral problems is the obvious primary concern of the district court." Brief for appellee at 14. The State contends that supervision "would almost certainly be necessary" beyond Kodi reaching the age of 19, given that he was already 18 years old at the time of the transfer hearing. *Id*. Because of the limited timeframe to attempt to achieve rehabilitation, this factor favors retention.

*(iv) Juvenile's Previous History, § 43-276(1)(e)*

Kodi claims the district court erred by "completely ignoring" Kodi's lack of criminal or juvenile court history. He argues that the court "should have insisted that the State do the hard work of obtaining actual evidence of a history that supported the filing of adult charges." Brief for appellant at 16-17.

The State points out that the district court made no explicit finding about Kodi's lack of prior juvenile court involvement and acknowledges that this factor weighs in favor of transfer. We also agree that Kodi's lack of any criminal or juvenile court history does not support a sound basis for retention. However, as the State notes, "this is only one factor among many." Brief for appellee at 15.

*(v) Juvenile's Best Interests, § 43-276(1)(f)*

Kodi argues that the "only mention" of his best interests is the district court's reference to there not being enough time in the juvenile court to rehabilitate, which is in his best interest. Brief for appellant at 17. He contends, "In actuality, the record is void of any evidence regarding [his] best interests" and this lack of evidence favors transfer given the State's burden of proof. *Id*.

The State contends that the district court's conclusion that Kodi would require supervision beyond the age of 19 was reasonable given the severity of the offenses and limited time remaining under a juvenile court's jurisdiction. We agree that rehabilitation is in Kodi's best interests and

accomplishing that is likely to require services beyond the time left under the juvenile court's jurisdiction. This factor favors retention.

### (vi) Public Safety, § 43-276(1)(g)

Kodi contends the district court "failed to discuss this factor and the record is completely void regarding public safety considerations," other than his mother's testimony that he had complied with all of his bond conditions. He suggests this weighs in favor of transfer.

The State argues that the district court did address public safety by voicing its concern that supervision of Kodi would be needed beyond him turning 19 years old given the severity of the offenses. Further, as the State points out, Kodi was "the perpetrator of a violent sexual assault against his much younger sibling." Brief for appellee at 16. The court's discussion about there being insufficient time to rehabilitate Kodi in the juvenile system implicitly factors in the court's concerns for the public's safety, and for the reasons stated, this factor favors retention.

### (vii) Length of Detention Needed, § 43-276(1)(i)

This factor considers "whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose." § 43-276(1)(i). Kodi argues that the district court failed to consider that he had been "out on bond for quite some time" and had complied with all bond conditions, including "the most stringent of which was the twice daily" in-person check-ins with the sheriff's office. Brief for appellant at 18. Kodi's mother testified that Kodi had not been a problem. Kodi therefore argues "there is no reason for secure detention for the security of the public." *Id*. He argues that "the only evidence" indicated that juvenile sexual offender treatment programs "with a demonstrated history of success" could be completed within the time left under the juvenile's court's jurisdiction, and that "there was no basis to conclude" that either Kodi's best interests or the security of the public required supervision or secure detention beyond his 19th birthday. *Id*. at 18-19.

As pointed out by the State, these considerations have already been addressed under previous factors, and the record supports the district court's conclusion that there simply was not enough time left under the juvenile court's jurisdiction for rehabilitation to be successful. This factor favors retention.

### (viii) Restorative Justice, § 43-276(1)(j)

Section 43-276(1)(j) considers whether the victim or juvenile agree to participate in restorative justice. Kodi argues that no evidence was presented regarding this factor and therefore "this factor weighed in favor of transfer" to the juvenile court. Brief for appellant at 19. With no evidence at all, we agree that this factor is equivalent to factors that favor transfer because § 43-276 starts with the presumption that the case should be transferred. See *State v. Aldana Cardenas*, 314 Neb. 544, ___ N.W.2d ___ (2023). Therefore, this factor does not support a sound basis for retention.

### (ix) Juvenile Pretrial Diversion Available, § 43-276(1)(k)

Similar to the previous factor, Kodi points out that once again there was no evidence regarding this factor and that the district court erred in failing to find that this factor favored

transfer to juvenile court. As set forth previously, the lack of evidence as to any factor makes it equivalent to factors that favor transfer, see *State v. Aldana Cardenas, supra*, and therefore, this factor does not support a sound basis for retention.

### (x) Use or Possession of Firearm, § 43-276(1)(l)

Kodi argues that the district court's "silence as to this factor was particularly illustrative of its consistent misapplication of the burden of proof." Brief for appellant at 19. He contends that "[o]bviously, the unauthorized possession of a firearm would favor the District Court's retention of jurisdiction," and "it necessarily follows that the absence of evidence" of the same supports transferring the case to the juvenile court. *Id*. at 19. We agree with Kodi that the lack of evidence of a gun being involved with the alleged offense results in this factor not supporting a sound basis for retention.

### (xi) Not Amenable to Rehabilitative Services, § 43-276(1)(m)

This factor considers whether a juvenile court has issued an order under § 43-2,106.03 which indicates the juvenile is not amenable to rehabilitative services that can be provided under the juvenile code. Kodi points out that the district court did not make a finding regarding this factor, and since "no order related to this statute was offered," this factor weighed in favor of transfer. We agree with Kodi that the lack of evidence regarding an order under § 43-2,106.03 results in this factor not supporting a sound basis for retention.

### (xii) Criminal Street Gang Member, § 43-276(1)(n)

Once again, Kodi contends this factor weighed in favor of transfer since there was no evidence that he was a gang member, and the district court did not make a finding indicating otherwise. We agree that this factor does not support a sound basis for retention.

### (xiii) Other Matters, § 43-276(1)(o)

Neither the district court nor Kodi contend there were other matters for consideration under this factor.

### 5. WEIGHING OF FACTORS

Kodi argues that most of the factors weighed in favor of transferring his case to the juvenile court, particularly since he had no criminal or juvenile court history and "more than sufficient time existed for him to complete an applicable treatment program." Brief for appellant at 21-22.

However, as we identified previously, "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). Nor is there any arithmetical computation or formula required in a district court's consideration of the statutory criteria or factors. See *State v. Tyler P.*, 299 Neb. 959, 911 N.W.2d 260 (2018). Although it is "preferable for the district court to refer to all the statutory considerations, the statute does not require it do so." *Id*. at 971, 911 N.W.2d at 269.

In this case, the district court gave "[s]ignificant weight" to "the fact that the crimes involved violence against a 10-year-old child" and that "the type of treatment necessary will extend

beyond [Kodi's] 19th birthday," which the court pointed out would occur within 1 year. The court found that "[t]o minimize the likelihood of reoffending," Kodi would need services for "a longer time" and that "[t]reatment options for sex offenders often take more than one year." The court found it to be in Kodi's best interest to be rehabilitated and that this could not be accomplished in the limited time left under the juvenile court's jurisdiction. The court further found that the security of the public may require continued secure detention of Kodi beyond his minority, and when balancing the public protection and societal security against his practical and nonproblematical rehabilitation, a sound basis existed for retaining the case.

When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

## VI. CONCLUSION

Finding no abuse of discretion, we affirm the district court's March 9, 2023, order refusing to transfer the case to juvenile court.

AFFIRMED.